## HOWELL CHEVROLET CO. *v.* NATIONAL LABOR RELATIONS BOARD.

No. 34.   Argued November 12, 1953.—Decided December 14, 1953.

*Erwin Lerten* argued the cause for petitioner.   With him on the brief was *Frederick A. Potruch.*

*Marvin E. Frankel* argued the cause for respondent. With him on the brief were *Acting Solicitor General Stern, George J. Bott, David P. Findling* and *Dominick L. Manoli.*

Opinion of the Court by MR. JUSTICE BLACK, announced by MR. JUSTICE REED.

The petitioner Howell Chevrolet Company retails Chevrolet automobiles and parts in Glendale, California. After hearings, the National Labor Relations Board found Howell guilty of unfair labor practices in refusing to bargain with its employees and intimidating them in various ways in violation of the National Labor Relations Act as amended.*   An appropriate order was issued. 95 N. L. R. B. 410.   The Court of Appeals for the Ninth Circuit enforced the Board's order, 204 F. 2d 79, rejecting the contention that the Act could not be applied to Howell.   On similar facts the Sixth Circuit held that the Labor Board had no jurisdiction over a local Ford auto-

---

*61 Stat. 136, 29 U. S. C. (Supp. V) § 151 *et seq.*

mobile dealer. *Labor Board* v. *Bill Daniels, Inc.*, 202 F. 2d 579. We granted certiorari to consider the single question presented by petitioner—whether the Act is applicable to retail automobile dealers like Howell. 345 U. S. 955.

Sections 10 (a) and 2 (7) of the Labor Act empower the Board to prevent "any person" from adversely "affecting commerce" by unfair labor practices "tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." The Board found that Howell's unfair labor practices tended to do this. Among others, the following facts underlie that finding:

Howell bought its new Chevrolets from a General Motors assembly plant located in California and its spare parts and accessories were delivered to it from General Motors warehouses in California. Forty-three percent of all this merchandise was manufactured in other states and shipped into California for assembly or distribution. During 1949 Howell's purchases from General Motors exceeded $1,000,000.

Howell's local retail establishment was closely supervised by General Motors. Sweeping control of the business was reserved by General Motors in a "Direct Dealer Selling Agreement." Howell had to sign this agreement to get his "non-exclusive privilege of selling new Chevrolet motor vehicles and chassis" and "parts and accessories." The agreement required Howell to make varied and detailed reports about his business affairs, to devote full time to Chevrolet sales, to keep his sales facilities at a location and conduct the business in a manner that satisfied General Motors, to permit General Motors to inspect Howell's books, accounts, facilities, stocks and accessories and to keep such uniform accounting systems as General Motors might prescribe. Many other terms of the agency agreement also emphasized the interdependence of Howell's local and General Motors' national activities.

All this evidence caused the Board to conclude that Howell was "an integral part" of General Motors' national system of distribution. Under these circumstances the Board was justified in finding that Howell's repeated unfair labor practices tended to lead to disputes burdening or obstructing commerce among the states. It follows that the Board had jurisdiction to act under the facts it found.

*Affirmed.*

MR. JUSTICE DOUGLAS dissents.