ALBINA ENGINE & MACHINE WORKS, INC., a corporation, Appellant,

v.

AMERICAN MAIL LINE, LTD., a corporation, Appellee.

No. 15829.

United States Court of Appeals
Ninth Circuit.

Jan. 2, 1959.

Rehearing Denied Feb. 10, 1959.

Mautz, Souther, Spaulding, Denecke & Kinsey, Arno H. Denecke, Portland, Or., for appellant.

Wood, Matthiessen, Wood & Tatum, Erskine Wood, John D. Mosser, Portland, Or., for appellee.

Before FEE and CHAMBERS, Circuit Judges, and JAMES M. CARTER, District Judge.

CHAMBERS, Circuit Judge.

At Portland in the Willamette River on April 7, 1955, during fire drill on appellee's ship, the Java Mail, a lifeboat's pelican hook became disconnected from the link on the falls lowering the boat. Thus, the lifeboat, out of control, plunged to the river injuring two seamen of the ship's crew. The accident was caused by the point of the hook in the lifeboat being worn short or because of inadequate, defective or out of repair guards on the hook which permitted the link to become disengaged. Asserting diversity of citizenship and the requisite amount in controversy, American Mail sought and obtained judgment of the district court full indemnity from Albina, a ship repair company, for the amounts it had to pay the seamen,[1] as well as damage to the lifeboat.

At the time in question the Java Mail was in port for its annual inspection and tests required by the United States Coast Guard. The tests are made either by a Coast Guard officer or in his presence to his satisfaction.[2]

---

1. The cases of the seamen having been compromised by American Mail, we have no finding in those cases determining on what ground the Java Mail was liable. So those cases bring this court neither help nor plague. Here the condition which produced the accident is known and was not new, and so we get into none of the problems of our case of Titus v. The Santorini, 9 Cir., 258 F.2d 352. How Java Mail could have defended against unseaworthiness, we cannot conceive. Of course, another trial judge might have found negligence, too, and the conditions of the Jones Act, 46 U.S. C.A. § 668 binding. But the only findings on negligence we have are in this case. And they are either against Albina or in favor of American Mail.

2. It is the court's impression, if a test is a simple one such as pulling a single

Albina, under contract, was doing various work on the Java Mail. The weight test for the lifeboats was not in the original undertaking, but was an addition thereto. The weight test was commonly performed by Albina for American Mail on its ships. It is not disputed that the weight test made for American Mail and passed by the Coast Guard was done by Albina. Albina makes much of the point that American Mail actually wrote the specification for the weight testing after the test and after the accident happened.[3] However, in itemizing its statement for repairs and services to American Mail, Albina reaffirmed the specification, changing the tense from future in American Mail's specification to past. We see no real point in the question of whether the contract was made orally or written. We are confident that Albina did undertake for pay[4] the "weight test" for American Mail. During the test the dangerous condition of the keeper devices on the hook (or perhaps the trouble was the point of the hook had worn down) became apparent to Albina's representatives. Yet they did not fix it or report it to American Mail. It was almost certainly not Albina's duty to repair.

■ There is evidence which supports the proposition that a weight test is not limited to ascertaining if the boat bottom will stand the strain of the authorized capacity weight. It necessarily must in-

clude the gear used in lowering the boat; otherwise, the test could be satisfied by just lifting the boat up from its cradle on the boat deck without lifting the boat out over the water and lowering it. The record permits a finding that the test made by Albina did not accomplish the purpose for which it was intended. If it was not Albina's duty to repair or correct the defect, then the trial court could find it had the duty to report the defect to American Mail or the Coast Guard.[5] What other purpose was there for the test?[6] The only argument that would appear valid against this position would be the one we have rejected: that Albina was only obligated to test the bottom of the lifeboat. If one finds the obligation to test was more than to furnish sand, we think the universal warranty, when one knows the purpose for which a job is intended, one is taken to represent that he has done it in a way that is reasonably fit for the purpose for which it was intended. There was ample evidence upon which a breach of this duty and proximate cause of an injury could be found. So we think that the trial court made no mistake in finding a basis for indemnity to American Mail from Albina.

But, says Albina, at worst for it, it was a joint tort feasor with American Mail and there is not indemnity between joint tort feasors. And it cites many cases. If we could find as a matter of law that American Mail was negligent the cases would require close inspection.

lever or opening a door, the Coast Guard inspector does the test himself. If the test is complicated or involves heavy work, the ship makes the test [or hires someone like Albina to do it] while the Coast Guard inspector watches.

3. American Mail's port engineer on April 6 orally ordered the "weight test" through Albina's repair superintendent.

4. The charge for "weight testing" all of the lifeboats was $240.00.

5. The Coast Guard Officer indicated his satisfaction with the test. The record indicates he probably observed the condition of the hook structure but was not impressed that it was defective. No one particularly pointed it out to him.

6. This court just cannot accept as a matter of law Albina's thesis that the proposition was that it would furnish sand and strong-arm labor to handle sand and that its only duty was to satisfy the Coast Guard inspector that it had done what he wanted done. For Albina, it can be said the inspector's testimony tends to support the thesis. (One would think if he took his motor car to the garage to have his spark plugs changed and the mechanic observed the fluid escaping from the cylinder or the hydraulic brakes that it was at least a question of fact as to whether the owner should be notified of the defect.)

314

While the trial judge made remarks from the bench indicating that he thought it was immaterial to the issues whether American Mail was negligent or not negligent, still the court in its findings affirmatively found American Mail not to have been negligent in any way. In the face of such a finding, the bench remarks legally disappear. Appellant presents a strong argument that American Mail was negligent at the time the boat was lowered and the injury occurred, but we are satisfied that the trial court did not have to find as a matter of law that American Mail was negligent. It could have so found, but did not. The finding was not clearly erroneous. And by McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20, the idea was laid to rest that this court can try admiralty fact questions anew.

So we come to a place where Albina has been found to have breached its warranty by negligent performance, proximate damage has ensued, and American Mail has been exculpated of all negligence by the court. All was found within permissible limits. We simply do not reach the joint tort feasor questions which might then take us to active and passive negligence problems in indemnity law.

Ryan Stevedoring Co. v. Pan-Atlantic SS Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, and Weyerhaeuser Steamship Co. v. Nacirema Operating Co., Inc., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491, are relied upon heavily by appellee. Appellant would distinguish them. We think they are helpful to appellee, but probably not needed here. Also, we think our own case of American President Lines v. Marine Terminals Corp., 9 Cir., 234 F.2d 753, is apposite in several particulars.

We cannot find reversible error in any of the findings of fact or conclusions of law to which appellant takes exception.

Judgment affirmed.