Hugh BRYSON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15881.

United States Court of Appeals Ninth Circuit.

March 30, 1959.

Certiorari Denied June 22, 1959.

See 79 S.Ct. 1437.

---

Gladstein, Andersen, Leonard & Sibbett, Richard Gladstein, Norman Leonard, San Francisco, Cal., for appellant.

Robert H. Schnacke, U. S. Atty., Richard H. Foster, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before CHAMBERS and HAMLIN, Circuit Judges, and SOLOMON, District Judge.

SOLOMON, District Judge.

This case is now before the court on Bryson's appeal from an order of the District Court denying his motion to reduce sentence under Rule 35 of the Federal Rules of Criminal Procedure, 18 U.S.C.

In essence, he contends

(1) that the sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment of the Constitution of the United States; and

(2) that the trial court applied an unlawful and improper standard in denying such motion.

Hugh Bryson was tried on two counts of an indictment which charged him with having falsely sworn that he was not a member of the Communist Party nor affiliated with such Party, in an affidavit filed with the National Labor Relations Board, in violation of § 1001, Title 18 United States Code. The evidence adduced at the trial showed that Bryson, beginning in 1937, was an active and militant member of the Communist Party and of the Marine Cooks and Stewards. He occupied positions of leadership in the Communist Party and accepted Party discipline. In 1947, he became the national president of his union. In that year, Bryson attended a meeting called by the Trade Union Director of the Communist Party to discuss the Communist Party attitude towards the recently-enacted Taft-Hartley Act, 29 U.S.C.A. § 141 et seq. The Director announced that Party members in labor unions should boycott the Act unless rival unions attempted to raid their membership or involve them in jurisdictional disputes in which event they should resign from the Party in name only but remain in close touch and alliance with the Party.

In April, 1951, Bryson and other officers of the union, in order to enable the union to avail itself of the machinery of the National Labor Relations Board to protect its membership from raids by other unions, swore that they were neither members of nor affiliated with the Communist Party.

Bryson was acquitted on the membership count but was found guilty on the affiliation count. He was sentenced to serve a term of five years imprisonment and to pay a $5,000 fine on the affiliation count, the maximum penalty for such offense.

Bryson in his appeal from the judgment of conviction assigned numerous errors, but none of them related to the sentence. A statement of his assignment of errors as well as a fuller statement of the facts is set forth in the opinion of the court which affirmed the judgment of conviction. 9 Cir., 238 F.2d 657, petition for rehearing denied, 9 Cir., 243 F.2d 837, certiorari denied 355 U.S. 817, 78 S.Ct. 20, 2 L.Ed.2d 34.

After the mandate was filed in the District Court, Bryson timely moved the court for an "order reducing or modifying the sentence heretofore made and entered herein, by suspending the imposition thereof, placing the defendant on probation, and for other and further relief," pursuant to Rule 35.

Accompanying the motion were many letters attesting to Bryson's good character as well as a long affidavit of Bryson's of a biographical character, containing more than 4,000 words.

In it Bryson told of his early life, the various jobs at which he worked, the high regard in which his parents were held by their neighbors and friends, the contributions he and other members of the Merchant Marine made during World War II, his shock and surprise at being indicted for false swearing and his greater shock at being convicted. He also told of his love of family and his desire to earn a living for them, his work in selling motels, the investors with whom he worked and socialized and whom he found to be human beings like his union members, and his desire for probation and for a peaceful life in his community.

The full and complete statements in Bryson's affidavit relative to his association with Communists,[1] his decision to break with them,[2] his signing the non-

1. "From early '38 I had gone to some Communist meetings. I had met Communists on ships and ashore, and others who were either somewhat sympathetic or who felt things in the Union should be changed. The ones I met didn't seem too interested in 'changing the world', or in trying to even change our form of Government."

2. "In 1947, however, I decided to quit my association with the Communists. I felt many of them were sincere, but I couldn't see where they were of any particular benefit to the Union, because they were being used by opposition forces to help split the Union. They constantly brought up issues it seemed for the sake of repetition, because the Union was doing all

communist affidavit,[3] and his arguments with people reputed to be Communists[4] are set forth in the margin.

At the conclusion of the hearing, the trial judge denied Bryson's motion to reduce or modify the sentence, and it is from this order that Bryson appealed.

## I.

█ Bryson in this appeal has asserted for the first time that the sentence imposed upon him constitutes cruel and unusual punishment in violation of the Eighth Amendment. He made no such claim at the time sentence was imposed or in his appeal from the judgment of conviction.

The Taft-Hartley Act requires union officers to file affidavits showing that they are free from Communist Party membership, affiliation or beliefs as a condition precedent to the filing by their unions of unfair labor charges or representation cases with the National Labor Relations Board.

Bryson asserts that the crime for which he was convicted "was at most a minimal and technical violation of the law"; that he was convicted of falsely swearing that he was not affiliated with the Communist Party—an offense which he claims is much less serious than false swearing with respect to either the personal advocacy of the violent overthrow of the Government or membership in a proscribed organization. He therefore argues that the imposition of the maximum sentence for the least severe of the three grades of offenses constitutes cruel and unusual punishment.

The vice of Bryson's argument is that Congress did not provide degrees, or grades of severity as between false swearing with respect to affiliation or membership in a proscribed organization or personal advocacy of the violent overthrow of government. Nor did Congress provide different punishments for different types of false swearing.

In American Communications Association v. Douds, 1950, 339 U.S. 382, 70 S. Ct. 674, 94 L.Ed. 925, the Court called attention to the mass of evidence submitted to Congress with reference to

it could to help further the membership's interests and that of working people generally. I did not go to any more meetings after April '47, and deliberately stayed away from associating with people many times called Communists in the Union as well as outside. I was thinking the Union itself had done well and the members were on the way to more security and a better life. I did not discount the work of the several who had given much to help put the Union in this position, but felt there were other places for them where they could do the same type of work in the way of improvements, but that we had become on a part [sic] and in some instances exceeded the other departments on the ships in the gains we had made, and that we could not constantly be fighting for more, because we were only one department and could not lead the industry."

3. "I told [my attorneys] I had ceased associating in any way with Communists in early '47, and that four years later I felt was ample time to have been disassociated. I hesitated in signing even though my attorneys felt there would be no difficulty because I had reached the stage in life where I felt I had done

about all that could be done for the Union, and I had reached the 'top' as far as I was concerned in the labor movement."

4. "And in the bail hearing I told him I had not been associated with the Communists since early '47, but he still forced me to jail, until the bail could be appealed and reduced, which it was later. As a matter of fact, during the closing days of the Union I headed, I had many serious arguments with people who had been accused of being Communists and with whom I violently disagreed regarding the course my then Union was taking. In particular, I had what almost amounted to fights with officials of the I.L.W.U. regarding my Union problems. * * * I mention this and these arguments I had with the I.L.W.U. officials simply in support of my statement in court that so far as reputed Communists are concerned, and the I.L.W.U. officials for years were reputed to be Communists, I have really had nothing to do with them, our relations have not been friendly, and outside of asking them for help, which I have not received, I have had nothing to do with them."

political strikes and to the likelihood of the disruption of commerce and industry by Communists and others proscribed by the statute who had infiltrated into unions for improper motives. It found ample constitutional justification for the provisions of the Taft-Hartley Act which sought to prevent such evils.

The sentence in this case being within the limits fixed by the statute should not be disturbed on the claim here asserted that it is cruel and unusual. Jackson v. United States, 9 Cir. 1900, 102 F. 473; Cochran v. United States, 8 Cir., 1930, 41 F.2d 193.

## II.

■■ The Court prefaced the denial of Bryson's motion for a reduction of sentence with a short statement concerning "the monstrous economic conditions that existed during the depression years in this country which drove many fine young people into the Communist Party," and concluded, "I wish I could believe Mr. Bryson is no longer a Communist. I wish I could believe he was dedicated as he apparently once was to Communism—I wish I could believe he were dedicated today to defend our system which I am sworn to uphold. I find nowhere in his affidavit any renunciation or denunciation of Communism or Communist doctrine."

Bryson contends that these statements show that the Court in determining the motion used an improper standard in that he was required to "declare an adherence to an undefined 'system' to which the Judge conceives himself to be dedicated." Bryson further contends that he did renounce and denounce Communism in his affidavit and that the Court was required to believe him, by reason of the fact that the Government did not file a counter affidavit. Because of the use of such standard and the failure to believe him, Bryson asserts the Court was guilty of an arbitrary abuse of discretion.

The jury found Bryson guilty of having falsely sworn that he was not associated with the Communist Party on an

instruction from the Court which permitted the jury to find Bryson guilty only if it found that he was a Communist "in every sense but that of the mere technicality of being a member—in everything but name."

■ The Communist Party is not an ordinary political party. It is a conspiratorial organization dedicated to the overthrow of the Government of the United States by force. United States v. Dennis, 2 Cir., 1950, 183 F.2d 201, 212, affirmed 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137.

■ In view of the nature of the crime, it was particularly appropriate for the Court to consider Bryson's attitude toward the Constitution and laws of the United States in determining whether he merited, as a matter of grace and not of right, a reduction of his sentence.

Bryson's trial was a long one. Many witnesses testified about his activities in and his associations with the Communist Party. Although Bryson did not testify at the trial, after he was convicted, he testified in connection with his application for bail.

Bryson, in support of his present motion, filed an affidavit in which he swore that he "had not been associated with the Communists since early '47." The jury found that he was so associated in April, 1951.

In view of these circumstances, the Court was not required to believe Bryson's statements with reference to Communism even though his affidavit was not contradicted. Quock Ting v. United States, 140 U.S. 417, 420, 11 S.Ct. 733, 35 L.Ed. 501; Zimmer v. Acheson, 10 Cir., 1951, 191 F.2d 209, 212; N.L.R.B. v. Howell Chevrolet Co., 9 Cir., 1953, 204 F.2d 79, 86, affirmed sub. nom. Howell Chevrolet Co. v. N.L.R.B., 346 U.S. 482, 74 S.Ct. 214, 98 L.Ed. 215.

We find no substance in Bryson's contentions, even when considered on their merits. In addition, we believe that this appeal must be dismissed.

■ In his motion under Rule 35, Bryson requested the trial court to re-

duce and modify his sentence by placing him on probation or by granting him other relief. In the original appeal, Bryson did not claim that the court erred in not placing him on probation, and no such claim would have been effective because once a defendant is convicted, he is in no position to demand probation. Probation is granted to a defendant as a privilege and not as a right. Burns v. United States, 287 U.S. 216, 220, 53 S. Ct. 154, 77 L.Ed. 266. An appeal will not lie from its denial. Elder v. United States, 9 Cir., 1944, 142 F.2d 199, 201.

In Brown v. United States, 9 Cir., 1955, 222 F.2d 293, the defendant was convicted of four counts of an indictment charging him with the sale and transportation of heroin which had been unlawfully imported into the United States. Consecutive sentences of 10 years and a $2,000 fine were imposed on each of the four counts. In a prior conviction on the same indictment, which had been reversed on appeal, the defendant had been convicted of five counts and received concurrent sentences of five years and fines totalling $1250. In other words, on the second trial defendant received sentences totalling 40 years as against 5 years on his first trial. In addition, the fines were increased from $1250 to $8,000. In the appeal, appellant called attention to the severity of the sentences and urged the court to reduce them. In disposing of this contention, the court referred to the case of Gurera v. United States, 8 Cir., 1930, 40 F.2d 338, 340, and quoted the following excerpt:

> "If there is one rule in the federal criminal practice which is firmly established, it is that the appellate court has no control over a sentence which is within the limits allowed by a statute." [5]

█ It is equally true that an appellate court has no authority either to reduce or modify a sentence or order the trial judge to do it on an appeal from a

denial of a motion under Rule 35. Flores v. United States, 9 Cir., 1956, 238 F.2d 758; Biren v. United States, 9 Cir., 1953, 202 F.2d 440; Kimbaugh v. United States, 5 Cir., 1952, 199 F.2d 453.

Bryson's appeal from the trial court's denial of his motion to reduce or modify sentence under Rule 35, Federal Rules of Criminal Procedure, is dismissed.

---

5. The same language was quoted in United States v. Rosenberg, 2 Cir., 1952, 195 F. 2d 583. There the court upheld sentences

of death imposed upon the appellants for having violated the Espionage Act, 18 U.S.C. §§ 793, 794.