Jose A. RAMOS, Appellant,

v.

MATSON NAVIGATION COMPANY, a corporation, Appellee.

No. 17942.

United States Court of Appeals Ninth Circuit.

March 22, 1963.

Rehearing Denied May 22, 1963.

Hamley, Circuit Judge, dissented.

L. Charles Gay, San Francisco, Cal., for appellant.

Brobeck, Phleger & Harrison, and Donald D. Connors, Jr., San Francisco, Cal., for appellee.

Before CHAMBERS, HAMLEY and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

This is a libel in admiralty, with a cause of action under the Jones Act (46 U.S.C. § 688), for damages and maintenance and cure arising from a claim that Ramos was injured aboard appellee's vessel. There are three causes of action. The first charges that the vessel was unseaworthy in that the stowage of laundry was unsafe, and accordingly, Ramos was not provided with a safe area in which to work. The second charges negligence, under the Jones Act, based upon the same facts. The third is for maintenance and cure. Judgment went against Ramos, who appeals.

The material parts of the court's findings of fact and conclusions of law are as follows:

"FINDINGS OF FACT

\* \* \* \* \* \*

"II.

On or about July 9, 1959, libelant terminated his employment aboard SS HAWAIIAN PILOT and reported to the United States Public Health Service Hospital in San Francisco, California, where he was made unfit for duty. Records of the aforesaid hospital reflect that on January 11, 1960; February 1, 1960; February 16, 1960 and February 26, 1960, libelant was made fit for duty by physicians at the said hospital, and I find he was so fit.

"III.

At all times material hereto SS HAWAIIAN PILOT was a safe and seaworthy vessel and was and constituted a safe place for libelant to work, and I so find.

"IV.

If libelant sustained any injury aboard SS HAWAIIAN PILOT, said injury was not caused in whole or in any part by the negligence of any employee, agent or officer of said SS HAWAIIAN PILOT, or of respondent, and I so find.

\* \* \* \* \* \*

"VI.

I find libelant to be an unreliable and untrustworthy witness.

"VII.

Respondent Matson Navigation Company paid libelant maintenance and cure at the rate of $8 per day from July 9, 1959 until February 1, 1960. Said respondent also paid libelant unearned wages in the amount of $338.20, following the termination of his employment aboard SS HAWAIIAN PILOT, as mentioned in Finding No. 1. Respondent has fully discharged its obligations to libelant as to maintenance and cure and unearned wages, and I so find.

\* \* \* \* \* \*

"CONCLUSIONS OF LAW

\* \* \* \* \* \*

"II.

The vessel SS HAWAIIAN PILOT was at all times material hereto, and all of her gear, equipment and appurtenances were at all times material hereto, safe, fit, and seaworthy, and said vessel constituted and was at all times material hereto a safe place for libelant to work.

"III.

There was no negligence on the part of any crew member of SS HAWAIIAN PILOT, nor on the part of any agent or employee of respondent Matson Navigation Company, which contributed proximately or directly, in whole or in part, to the condition of libelant which caused him to terminate his employment aboard SS HAWAIIAN PILOT on July 9, 1959, as aforesaid.

"IV.

Any disability or partial disability which libelant may have had on or after July 9, 1959, was not caused directly or proximately, or in whole or in part by any negligence of any employee or agent of respondent Matson Navigation.

"V.

Respondent Matson Navigation Company has completely discharged its liability to libelant for maintenance and cure and for unearned wages: there is no sum of money whatsoever due, owing or unpaid from respondent to libelant."

■ Appellant attacks findings III and IV and conclusions II, III and IV as inadequate, and as not supported by the evidence. He does not claim that the basic findings are insufficient in form. Thus, he states in his closing brief, as to finding III, "This is a direct finding of fact, and sufficient in form." "A finding of seaworthiness is usually a finding of fact." (Stone, C. J., in Mahnich v. Southern S.S. Co., 1944, 321 U.S. 96, 98, 64 S.Ct. 455, 457, 88 L.Ed. 561) We think the same can be said of finding IV, as to negligence, especially when it is read with conclusion III, which is as much a finding as it is a conclusion. Appellant cites and apparently agrees with the views of Judge Learned Hand, in Petterson Lighterage & Towing Corp. v. New York Central R. Co., 2 Cir., 1942, 126 F.2d 992, 996, where he said: "Findings should not be discursive; they should not state the evidence or any of the reasoning upon the evidence; they should be categorical and confined to those propositions of fact which fit upon the relevant propositions of law." (See also Carr v. Yokohama Specie Bank, Ltd., 9 Cir., 1952, 200 F.2d 251, 255) Appellant's

argument as to the inadequacy of the findings is, in part, inconsistent with the foregoing views. He complains that the court did not find whether or not he suffered an accident on appellee's ship, and points to finding IV as indicating that perhaps he did. Yet, assuming that there were such an accident, appellee would be liable only if there was unseaworthiness, which caused the accident, or negligence attributable to appellee, which caused the accident. The court did find against both of these.

■ Appellant also suggests that the court should have made findings as to what, if anything, did happen to him on the ship. He suggests that the finding of seaworthiness may be nothing more than a conclusion that, although an accident did occur, and although it was caused by the condition to which appellant and his witness attributed it, that condition is not one of unseaworthiness. He urges that the condition of which he complains was, as a matter of law, one of unseaworthiness. This position, we think, is inconsistent with appellant's statement, quoted above, that the finding is a direct finding of fact, and sufficient in form. If it is, then it must be presumed that the court made such subsidiary findings, as to the evidence, as are necessary to support it.

■■ We are committed to the proposition that a finding as to negligence, or as to unseaworthiness, is one of fact, not to be upset by us unless clearly erroneous. (See, as to negligence: Pacific Tow Boat Co. v. States Marine Corp., 9 Cir., 1960, 276 F.2d 745; Albina Engine & Mach. Works v. American Mail Line, Ltd., 9 Cir., 1959, 263 F.2d 311; Amerocean S.S. Co. v. Copp, 9 Cir., 1957, 245 F.2d 291; and as to unseaworthiness: Admiral Towing Co. v. Woolen, 9 Cir., 1961, 290 F.2d 641.) At the same time, we think it better practice for the court to make enough findings as to what actually happened, so that the parties and this court can appraise the ultimate finding as to negligence or seaworthiness. We have, from time to time, remanded cases with the requirement that

such findings be made. (See Irish v. United States, 9 Cir., 1955, 225 F.2d 3; same, 1957, 243 F.2d 874.) But for reasons hereafter stated, we do not think it necessary or desirable to do so here.

■■ We turn to the evidence. In doing so, we have in mind that the burden of proof, as to both unseaworthiness and negligence, was upon appellant, not upon appellee. (Lieberman v. Matson Nav. Co., 9 Cir., 1962, 300 F.2d 661.) This necessarily means that if the plaintiff fails to prove unseaworthiness or negligence, findings such as were made here are not clearly erroneous, even though there be no affirmative proof offered to show that the vessel was seaworthy, or that due care was used. Often, when we say that a finding against a party is not clearly erroneous, or is supported by the evidence, what we mean is that because of the burden of proof, the finding is not clearly erroneous because it is supported by a lack of contrary evidence.

Ramos was ship's cook. He testified that, in company with one Freitas, he went to the "reefer" to get frozen meat for the next day's meal. The "reefer" was on a deck below the galley. Two trays were filled with meat and the two men, each carrying a tray, started back to the galley, Freitas in the lead. Beside them in the passageway was a "laundry corral," made of horizontal wooden slats, starting near the deck and rising to about from three to six feet from the deck above. It was used for storage of bags containing soiled linen. Ramos said that the bags were irregularly piled above the top board of the corral, in such a way that they could fall, and that one did fall, knocking him to the deck, and causing injury to his back.

Freitas' testimony was by deposition. He gave a similar description of the corral and the stacking of the bags. He said it was higher than Ramos said it was. He did not see the bag fall, or Ramos fall. He was starting up the ladder when he heard a noise, turned around, and saw Ramos lying on the deck,

with a laundry bag beside him and the contents of the tray scattered over the deck. Neither Ramos nor Freitas testified to any defect in the construction of the corral. The only evidence that would support a finding of either unseaworthiness or negligence was their testimony as to the manner in which the bags were piled above its top.

■ Appellee's defense was an attack upon Ramos' credibility, and there is ample evidence in the record to sustain the court's finding that he was "an unreliable and untrustworthy witness." He was shown to have had a series of accidents aboard various ships, each during the course of a voyage, and each resulting in a back injury. As a result of each, he collected maintenance and cure, (including unearned wages for the balance of the voyage), and a cash settlement. When the alleged accident here involved occurred on July 7, 1959, he had a claim pending against his union for another back injury, said to have been incurred while working in the union's coffee shop. He saw the doctors at San Francisco Marine Hospital July 9, and he dismissed his claim against the union's insurance carrier on July 10, "for my own personal reasons." The court could well conclude that he had gone into the bad back business, and had just found another "pigeon" in appellee, which he would rather pursue than his own union. There were also many inconsistencies in his testimony while on the stand. Moreover, he was impeached, as to much of his story, by a private detective, who, posing as a political precinct worker, watched him mow his lawn for about 40 minutes and lift the mower over a fence, and then had a chat with him about his work and his physical condition.

But Ramos asserts that the court could not disregard the uncontradicted testimony of Freitas. We do not agree. Having concluded that it could not believe Ramos, the court could well conclude that Freitas was helping a fellow seaman by telling a fictitious story. There are some inconsistencies that lend support to this conclusion. For example, Ramos told the doctor at the Marine Hospital that he was carrying "a quarter of beef." Freitas said the meat "was chicken tamales. I remember that." "The tamales was scattered all over the deck." The court could well feel that the menu that was being served to it was overelaborate.

■ We have long since abjured the notion that a court cannot reject "uncontradicted" testimony that it finds not worthy of belief. (Quon v. Niagara Fire Ins. Co., 9 Cir., 1951, 190 F.2d 257, 259; N. L. R. B. v. Howell Chevrolet Co., 9 Cir., 1953, 204 F.2d 79, 86, aff'd without discussion of the point, 346 U.S. 482, 74 S.Ct. 214, 98 L.Ed. 215, where we described the notion as "an ancient fallacy"; Factor v. Commissioner, 9 Cir., 1960, 281 F.2d 100, 111). The rule is equally applicable to testimony given by deposition (Lau Ah Yew v. Dulles, 9 Cir., 1958, 257 F.2d 744, 746), or by stipulation (Tucker v. Brady, 9 Cir., 1962, 305 F.2d 550, 552). As we said in Tucker, "By the device of refraining from putting [the witness'] demeanor to the test, appellant should not be able to render credible as a matter of law that which otherwise might have been disbelieved."

■ It is clear to us from the whole record, and from finding VI, that the trial court simply did not believe Ramos, either as to how the claimed accident occurred, or as to his claimed injuries. We therefore think that it would be a work of supererogation to send the case back to the trial court to permit him to tell us so in more detail. This is what happened in Irish, supra, and all that was accomplished was the addition of more paper to the record, a second appeal, and a delay of twenty-two months in final decision.[1]

1. The following Fable, by Ambrose Bierce (Collected Writings 559 (1960 ed.)) seems in point:

"THE PARTY OVER THERE
A Man in a Hurry, whose watch was at his lawyer's, asked a Grave Person the time of day.

As we have shown, the only "fact" testified to to show either unseaworthiness or negligence was the piling of laundry bags above the top of the corral, in such a manner that one of them could and did fall and strike Ramos. The court, having found no unseaworthiness and no negligence, must have disbelieved that testimony. That is the end of the matter. "The burden of proof was on appellant. If the testimony produced lacked credibility, it was not proof even if uncontradicted." (Quon v. Niagara Fire Ins. Co., supra, at 259.)

 The court's finding VII and conclusion V, as to maintenance and cure, are also fully supported. Ramos says that he was again found unfit in March, 1960, but the court did not have to decide that his then unfitness was one that occurred during his employment on appellee's ship, or was a continuation of any illness or injury that did. One of the doctors felt that he was "somatizing." In other words, it was all in his head.

Affirmed.

CHAMBERS, Circuit Judge (concurring).

I concur in the foregoing opinion. In my judgment the trial judge who saw him found all of the testimony of Ramos untrustworthy. Maybe the trial judge was wrong in doing so, but we are in no position to so find. I desire to say at this time I have come to question our first case of Irish v. United States, 225 F.2d 3. I think we should have affirmed the case on the first hearing. But there judge number one thought it should be reversed, judge number two thought it should be sent back for more findings.

(My concurrence with judge number two at the time indicates I could find no one to agree with me.) But in the end the result was reached which I thought should be reached. 243 F.2d 874.

HAMLEY, Circuit Judge (dissenting).

The claimed unseaworthiness was in so storing laundry bags that one fell upon appellant while he was in a passageway intended for use by crewmen. The trial court made no finding as to whether the bag was stored in a rack along the passageway; if so, whether the bag fell from the rack; and, if so, whether the bag struck appellant when it fell. Consequently, we do not know, from the conclusional finding of seaworthiness, whether the trial court thought appellant had not been struck by a bag stored in the rack, or whether it thought that, even so, this would not establish that the vessel was unseaworthy.

I think we are entitled to findings of fact which are at least sufficiently explicit so that we will know whether we are dealing with a question as to the sufficiency of the evidence as to how the accident occurred, or with a question of law as to whether insecurely stored bags could render a vessel unseaworthy. All that the majority states concerning the right of the trial court to disbelieve witnesses is beside the point if that was not the basis of the court's conclusional finding.

There was, to be sure, a finding of fact (if such an observation may be so labeled) that appellant was an unreliable and untrustworthy witness. But the court may here have been referring only to appellant's testimony as to injuries sustained. It is notable that there is no similar finding or observation concerning

'I heard you ask that Party Over There the same question,' said the Grave Person. 'What answer did he give you?'

'He said it was about three o'clock,' replied the Man in a Hurry; 'but he did not look at his watch, and as the sun is nearly down I think it is later.'

'The fact that the sun is nearly down,' the Grave Person said, 'is immaterial, but the fact that he did not consult his timepiece and make answer after due de-

liberation and consideration is fatal. The answer given,' continued the Grave Person, consulting his own timepiece, 'is of no effect, invalid and void.'

'What, then,' said the Man in a Hurry, eagerly, 'is the time of day?' 'The question is remanded to the Party Over There for a new answer,' replied the Grave Person, returning his watch to his pocket and moving away with great dignity.

He was a Judge of an Appellate Court."

**134**

Freitas' testimony to the effect that he heard a noise, turned around, and saw appellant lying on the deck with a laundry bag beside him.

What the Supreme Court said, in Dalehite v. United States, 346 U.S. 15, 24, note 8, 73 S.Ct. 956, 962, 97 L.Ed. 1427, concerning the need of findings on the preliminary facts relied upon as warranting a conclusional finding of "negligence," is equally applicable to the concept of "unseaworthiness." The court there said:

"* * * Fed.Rules Civ.Proc., Rule 52(a), in terms, contemplates a system of findings which are 'of fact' and which are 'concise.' The well-recognized difficulty of distinguishing between law and fact clearly does not absolve district courts of their duty in hard and complex cases to make a studied effort toward definiteness. Statements conclusory in nature are to be eschewed in favor of statements of the preliminary and basic facts on which the District Court relied. Kelley v. Everglades Drainage District, 319 U.S. 415 [63 S.Ct. 1141, 87 L.Ed. 1485], and cases cited. Otherwise, their findings are useless for appellate purposes. In this particular case, no proper review could be exercised by taking the 'fact' findings of 'negligence' at face value. And, to the extent that they are of law, of course they are not binding on appeal. E. g., Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 153–154, and concurring opinion at 155–156 [71 S.Ct. 127, 95 L.Ed. 162]."

I would remand the cause to the district court for findings of fact as to whether and how the laundry bag was stored, whether it fell, and if so, whether it struck appellant. If the trial court believes that the evidence is insufficient to establish any or all of these facts, a finding to that effect would suffice for purposes of appellate review, since appellant had the burden of proving the vessel unseaworthy.