419 F.2d 1207
 72 L.R.R.M. (BNA) 2698, 136 U.S.App.D.C. 226
 AMALGAMATED CLOTHING WORKERS OF AMERICA, AFL-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, Washington
Industries, Inc. andMcEwen Manufacturing Company,
Intervenors.
McEWEN MANUFACTURING COMPANY, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 Nos. 22088, 22568, 22569.
 United States Court of Appeals District of Columbia Circuit.
 Argued Oct. 21, 1969.
Decided Nov. 13, 1969, Certiorari Denied March 23, 1970, See
90 S.Ct. 1120.
 
 Mr. Jacob Sheinkman, New York City, for petitioner in No. 22,088.
 Mr. Carmack Cochran, Nashville, Tenn., for petitioner in Nos. 22,568 and 22,569 and intervenor McEwen Mfg. Co. in No. 22,088.
 Mr. Seth D. Rosen, Attorney, National Labor Relations Board, of the bar of the Supreme Court of Connecticut, pro hac vice, by special leave of court, for respondent. Messrs. Arnold Ordman, General Counsel, National Labor Relations Board, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Herman M. Levy, Attorney, National Labor Relations Board, were on the brief for respondent.
 Mr. Wilson Sims, Nashville, Tenn., for intervenor Washington Industries, Inc.
 Before WRIGHT, LEVENTHAL and ROBB, Circuit Judges.
 PER CURIAM:
 
 
 1
 This appeal consolidates various competing petitions to review, modify, set aside, and enforce an order of the National Labor Relations Board holding that the McEwen Manufacturing Company had violated Sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act[1] during the course of an organizational campaign and representation election involving the Amalgamated Clothing Workers of America, AFL-CIO. The company seeks to set aside the finding of 8(a)(1) and 8(a)(5) violations and the Board order to bargain with the union. The union petitions for review of the Board's finding that McEwen and its parent, Washington Industries, Inc., were not joint employers under the Act; for review of the Board's decision that McEwen had lawfully established a nosolicitation rule; and to require the Board to order certain additional remedies. We reject these challenges to the Board's decision and enforce its order.
 
 
 2
 * The Board found that a letter and speech by McEwen's president to all employees just before the election warning that the plant might be closed if the union won, and the 'extensive and widespread acts of interrogation and intimidation' of employees by company supervisors violated Section 8(a)(1).[2] After a careful review of the record, we find that substantial evidence supports this finding.
 
 
 3
 The company argues that in any event its Section 8(a)(1) violations may not serve as a predicate for the Board's order to bargain. The Supreme Court last term made it clear in NLRB v. Gissel Packing Co.[3] that 'if the Board finds that the possibility of erasing the effects of past practices and of ensuring a fair election (or a fair rerun) by the use of traditional remedies, though present, is slight and that employee sentiment once expressed through cards would, on balance, be better protected by a bargaining order, then such an order should issue * * *.'[4] We find substantial evidence to support the Board's conclusion that the interrogation by company supervisors and the speech and letter from the company president made the holding of a fair election impossible.[5]
 
 
 4
 The company, however, challenges the Board's finding that on May 28, 1966, the union had valid authorization cards from a majority of the employees. The company's basic contention is that some of the authorization cards were obtained by union misrepresentations, the signers being told that the 'signatures were being obtained for the purpose of holding an election, (and) that the signer would have the opportunity to vote (for or against the union) at the election.' Cards like those in question here which clearly and unambiguously designate the union as the signer's bargaining agent can be used to show a union's strength unless the union representatives in obtaining the cards 'deliberately and clearly cancell (the clear language of the card) with words calculated to direct the signer to disregard and forget the language above his signature.' Since elections usually follow even when authorization cards are solicited, a representation that there will be an election does not of itself invalidate the cards.[6]
 
 
 5
 The company also contends that the cards of 18 employees are invalid because those employees were never called before the trial examiner to identify their signatures. However, the courts have not imposed any requirement of authentication by the signer personally; testimony by one who witnessed the signature is adequate. Colson Corporation v. N.L.R.B., 8 Cir., 347 F.2d 128, 134, cert. denied, 382 U.S. 904, 86 S.Ct. 240, 15 L.Ed.2d 157 (1965). Fifteen of these cards were authenticated by people who witnessed their execution. The other three cards were properly authenticated by testimony that the signer had returned the card to the union agent, thus adopting as his own the signature thereon.[7]
 
 
 6
 Since the Board properly concluded that the union did represent a majority of the employees on May 28, 1966, and that the company had made a free election impossible, under Gissel the Board was justified in issuing an order to bargain.
 
 II
 
 7
 With respect to the points raised by the union, we affirm the Board's conclusion that the no-solicitation rule was lawfully established by the company in this case. The rule was admittedly valid on its face and on this record we cannot fault the Board's finding that it was not promulgated for a discriminatory purpose. See United Steelworkers of America v. N.L.R.B.,129 U.S.App.D.C. 260, 262, 393 F.2d 661, 663 (1968). We reject also the union's claim that additional remedies are required. The Board's wide discretion to fashion appropriate remedies insulates its action in this case from judicial intervention.[8]
 
 
 8
 Finally, the union asserts that McEwen and its holding company parent, Washington Industries, were joint employers under the Act and that the Board's order should also run against Washington Industries. Again, on this record we cannot fault the Board's disposition of this contention. See M. Lowenstein & Sons, Inc., 150 NLRB 737 (1964); compare Freda Redmond and Sir James, Inc., 147 NLRB 1025 (1964). This court, of course, remains open to deal with any interference with its enforcement order by persons not now parties to this proceeding.[9]
 
 
 9
 Accordingly, the union's petition to review and modify is denied, the company's petitions to review and set aside are denied, and the Board's cross-application for enforcement is granted.
 
 
 10
 So ordered.
 
 
 
 [1]
 29 U.S.C. 158(a)(1) and (5) (1964)
 
 
 [2]
 The Board's decision and order are reported at 172 NLRB No. 99 (1968)
 
 
 [3]
 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969)
 
 
 [4]
 395 U.S. at 614-615, 89 S.Ct. at 1940. The Court indicated that a bargaining order could also be imposed 'without need of inquiry into majority status' where the 'employer's threats of reprisal were so coercive that, even in the absence of a 8(a)(5) violation, a bargaining order would have been necessary to repair the unlawful effect of those threats.' Id. at 613, 615, 89 S.Ct. at 1940-1941
 
 
 [5]
 The company points out in its brief that on August 15, 1969, the Board amended its order of July 3, 1969, by issuing an errata containing a further paragraph. This errata was added after petitions for review had been filed by both the union and the company. We rejected a motion to strike the errata from the record on October 3, 1968. We see no reason to strike that errata now. The additional paragraph in no way altered the remedial order; it merely amplified the rationale behind the Board's decision and helped explain why the Board felt that an order to bargain would be necessary. The company was in no way prejudiced by the addition of this errata
 
 
 [6]
 NLRB v. Gissel Packing Co., supra Note 3, 395 U.S. at 606, 89 S.Ct. 1918. In Gissel the Court explicitly approved the following reasoning of a trial examiner:
 'With respect to the 97 employees named in the attached Appendix B Respondent in its brief contends, in substance, that their cards should be rejected because each of these employees was told one or more of the following: (1) that the card would be used to get an election (2) that he had the right to vote either way, even though he signed the card (3) that the card would be kept secret and not shown to anybody except to the Board in order to get an election. For reasons heretofore explicated, I conclude that these statements, singly or jointly, do not foreclose use of the cards for the purpose designated on their face.'
 395 U.S. at 584 n. 5; id. at 608, 89 S.Ct. at 1925.
 
 
 [7]
 N.L.R.B. v. Howell Chevrolet Co., 9 Cir., 204 F.2d 79, 85-86, enforcing 95 NLRB 410, affirmed on other grounds, 346 U.S. 482, 74 S.Ct. 214, 98 L.Ed. 215 (1953)
 The company on appeal to this court argued that one card should not have been counted because the signature on the card was printed, although the withholding certificate in the company's possession for the same employee was signed in script. The trial examiner concluded that the card should not be counted because, in view of the discrepancy between the signatures, he felt that the General Counsel had failed to prove the authenticity of the signature on the card despite the testimony of a witness to the execution. The Board reversed the trial examiner as to this card and found that the signature was valid in view of the 'uncontradicted testimony' of the fellow employee who witnessed the signature. Since the Board obviously credited the uncontradicted testimony, it was justified in predicating its ruling on it.
 
 
 [8]
 United Steelworkers of America, AFL-CIO, Local 5571 v. N.L.R.B., 130 U.S.App.D.C. 369, 373, 401 F.2d 434, 438 (1968)
 
 
 [9]
 3 W. Barron & A. Holtzoff, Federal Practice and Procedure 1437 (Wright ed. 1968 Pocket Part). See Regal Knitware Co. v. NLRB., 324 U.S. 9, 14, 65 S.Ct. 478, 89 L.Ed. 661 (1945); Bullock v. United States, 6 Cir., 265 F.2d 683, 691, cert. denied, 360 U.S. 909 932, 79 S.Ct. 1294, 3 L.Ed. 1260 (1959); Kasper v. Brittain, 6 Cir., 245 F.2d 92, 96, cert. denied, 355 U.S. 834, 78 S.Ct. 54, 2 L.Ed.2d 46 (1957)