**Syvert BIKTJORN and Lillian Biktjorn, husband and wife, Plaintiffs,**

v.

**Odin BENDIKSEN, personal representative for the Estate of E.H. Bendiksen, deceased, In Personam, M/V SILVER WAVE, Number 591077, In Rem, Defendants.**

**No. C 90 0107Z(SC).**

United States District Court, W.D. Washington.

May 20, 1991.

Anthony Martin Urie, Seattle, Wash., for plaintiffs.

David J. Farrell, Jr., Clayton G. Ramsey, Helsell, Fetterman, Martin, Todd & Hokanson, Seattle, Wash., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CONTI, District Judge.

This case came on for hearing without a jury May 13, 14, and 15, 1991 before the Honorable Samuel Conti. Anthony Urie appeared for plaintiff Syvert Biktjorn;[1] Clayton Ramsey and David Farrell appeared for defendants Odin Bendiksen, personal representative for the estate of E.H. Bendiksen, deceased, *in personam,* and the M/V Silver Wave, *in rem.* The suit involves a private action in admiralty law under the Jones Act, 46 U.S.C. section 688, for damages for personal injury allegedly sustained as a result of an accident aboard the M/V Silver Wave in 1987. Plaintiff claims that on October 6, 1987, while fishing for crab on the Bering Sea on the motor vessel the Silver Wave, he was injured in an accident, caused by the defendants' negligence, in which plaintiff was struck by a large wave and/or a 700–pound crab pot. He claims the captain and/or crew of the Silver Wave were negligent in failing to: provide proper safe deck working conditions; adequately secure the crab pot on the stack of crab pots; accurately calculate the weather conditions and their effect on the crab pots; and consider the safety of plaintiff in performance of his duties on board the Silver Wave. Alternatively, plaintiff claims he was injured as a

---

**1.** Lillian Biktjorn ceased to be a plaintiff in this    action as of the day before the trial began.

result of unsafe deck procedures requiring him to push crab pots by himself in rough weather.

As a result of the Silver Wave accident, plaintiff claims, he sustained an injury to his neck, right shoulder, right leg, right arm, right hand, and right ring and little fingers, for which he underwent an anterior cervical discectomy on June 29, 1989. The defendants deny all allegations of negligence, and argues plaintiff suffered no injury aboard the Silver Wave over and above his prior chronic problems, which are identical to those he claims were caused by the Silver Wave accident.

The court, having considered all the evidence before it at trial and the briefs and argument of counsel, makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Plaintiff Syvert Biktjorn claims to have been injured on October 6, 1987, while working as a half-share crewman aboard the Silver Wave. At that time the vessel was engaged in king crab fishery in the Bering Sea and the plaintiff was 47 years old.

2. There were no eyewitnesses to the alleged accident. The only other person besides plaintiff alleged to be present, deckhand Dwayne Stensland, did not observe the accident; he only saw plaintiff lying on the deck afterwards.[2]

3. In the absence of eyewitnesses, the testimony of the plaintiff himself is the sole evidence to which the court can turn to find out how, why, and if the plaintiff was injured at the time in question. The credibility of the plaintiff is essential in making the factual findings in this case. However, the evidence presented to the court has created serious doubt as to the plaintiff's credibility. Regarding the alleged accident itself, plaintiff has given numerous different accounts of what happened, including the following:

a. In his original complaint, plaintiff claims he was "struck by a steel king crab pot ... [which] was stacked on top of numerous other king crab pots on the deck of the Silver Wave. The crab pot was inadequately secured on the stack of other crab pots and said crab pot came loose from the stack, flying through the air and striking plaintiff Syvert Biktjorn in the back and neck while engaged in his duties on the deck of the Silver Wave."

b. In his Third Amended Complaint, plaintiff makes the above allegation, but additionally claims in the alternative that he was injured "as a result of unsafe deck procedures requiring plaintiff to push crab pots by himself in rough weather."[3]

c. At trial, the plaintiff first testified that he was pushing a crab pot from the launcher towards the stern of the vessel by putting his back up against the pot, grabbing the netted part of it with both hands, and pushing the pot with his back. He said he was originally pushing the pot with his co-worker, Dwayne Stensland, toward the stacking place, as per normal procedure. When he was halfway to the stack, the co-worker left to get another pot. Then, plaintiff stated, a wave hit the pot he was pushing from the back, sent plaintiff flying across the deck, and struck plaintiff's right shoulder.

d. On cross examination thereafter, the plaintiff said the pot did not actually hit him. Later, he again stated that a pot did hit him.

e. In the course of his deposition, plaintiff stated, at various times: he didn't

---

**2.** Mr. Stensland stated, "I never saw him get hurt in any way on the Silver Wave. I don't remember any sort of injury Sy had involving a crab pot, or a slip and fall, or a wave hitting the vessel, or anything like that."

**3.** The court notes in passing that plaintiff's attorney, Anthony Urie, explained in his closing argument that the alternative claims were necessitated by his inability to communicate adequately with the plaintiff. Mr. Urie claimed that he was in a small room with the plaintiff, who came to the United States from Norway when he was twenty years old, and another Norwegian. He said both Norwegians were speaking Norwegian to each other most of the time, and that plaintiff's English is not good. However, upon observing plaintiff on the witness stand, the court found him softspoken and heavy-accented, but by no means unintelligible.

 

know how the accident happened; "heavy and big waves" caused the crab pot to hit him; the pot had not been on the deck the whole time, but rather came off a stack which was probably three pots high; the pot hit him while he was "unhooking the traps" with "both hands;" and a wave did not cause the crab pot to hit him.

f. On October 22, 1987, plaintiff's treating physician, Dr. Nutter, reported that plaintiff told him that "while crabbing, he slipped on the deck, fell, grabbed something with his outstretched left hand, injuring his left wrist slightly, but felt something pull and snap over the right side of his neck and back."

g. On November 4, 1987, Chiropractor Boshes recorded that plaintiff fell "while pushing a trap for crabs on deck."

h. Another treating physician, Dr. Mendelson recorded plaintiff's story on February 9, 1988 as a fall while pushing a 700–pound crab pot: "He was hit by a wave and was thrown into the air."

i. Dr. Kryger recorded on May 9, 1988 that plaintiff "got hit by a wave while working on a fishing boat."

j. On June 28, 1988, plaintiff's surgeon, Dr. Savitz, reported, "while attempting to manipulate a cage which weighed 700 pounds, he suffered an injury to his neck and right shoulder by being hit by a wave."

4. These conflicting accounts of what happened, all given at various times by the plaintiff himself, call into serious question the plaintiff's credibility. In addition, the court finds that the plaintiff's manner and demeanor on the witness stand was recalcitrant, uncooperative, and evasive.

5. The plaintiff's credibility is also impugned by evidence that during doctor visits and in his deposition, he often concealed parts of his medical history. Plaintiff and his wife were involved in a two-car accident on July 22, 1977, resulting in injury to plaintiff's neck, right shoulder and right arm, and many years of disability payments. Plaintiff was treated or evaluated

between 1978 and 1987 by at least 18 different doctors for complaints identical to those for which he now asserts defendant is liable.

However, in interrogatory answers and his deposition, plaintiff repeatedly denied that he had ever had any physical problems or been examined and treated for his neck, right leg, right ear, right shoulder, right arm, right hand, and right ring and little fingers prior to his alleged Silver Wave accident. Plaintiff also misrepresented his prior medical history to many of his own treating physicians.[4]

6. There is no claim by the plaintiff or the other deckhand present at the alleged accident that there was any kind of substance such as oil on deck that could cause a slip and fall and would render the vessel unseaworthy or indicate negligence.

## CONCLUSIONS OF LAW

1. Jurisdiction over this action is proper under the Jones Act, 46 U.S.C. § 688.

2. Under the Jones Act, plaintiff has the burden of proving that any unseaworthiness or defendants' negligence was the proximate cause of his injury. *See Ramos v. Matson Navigation Co.*, 316 F.2d 128, 131 (9th Cir.1963).

3. Due to the total lack of credibility on the plaintiff's part, plaintiff has not sustained his burden of proving that he was injured by defendants' negligence or the Silver Wave's unseaworthiness. Accordingly, the defendants are not liable for plaintiff's injuries under the Jones Act.

IT IS SO ORDERED.

---

**4.** For instance, plaintiff told Dr. Nutter on October 22, 1987 that "Prior to [the alleged Silver Wave accident] he was in good health ..." As another example, in 1979, Dr. Denton wrote to an attorney representing plaintiff that plaintiff "specifically denied that there was any history of injury. I did not find out about the automobile accident until somewhat later ..."