139 F.3d 910
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Robert WYATT, Plaintiff-Appellant,
v.
ROYAL SEAFOODS INC., in personam; Snow King F/T, Official
No. _______, Her Engines, Machinery, Appurtenances
and Cargo., in rem, Defendants-Appellees.
 No. 96-35960.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 5, 1997.
Feb. 13, 1998.
 
 Appeal from the United States District Court for the Western District of Washington Thomas S. Zilly, District Judge, Presiding.
 Before WRIGHT, REAVLEY**, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The district court correctly granted summary judgment on Wyatt's Fair Labor Standards Act claim, because the fishermen's exemption applies. That statutory provision exempts from coverage
 
 
 3
 any employee employed in the catching, taking ... of any kind of fish ... or in the first processing, canning or packing such marine products at sea as an incident to, or in conjunction with, such fishing operations, including the going to and returning from work....
 
 
 4
 29 U.S.C. § 213(a)(5). Wyatt was such an employee.
 
 
 5
 Wyatt argues that he was not exempt, because the vessel should be deemed to have engaged in more than "first processing." He suggests a narrow interpretation of the phrase "first processing" that is not supported by the long-standing administrative construction. The vessel administrative manager's affidavit establishes without contradiction from any other evidence that "the only fish processed aboard the F/T Snow King were fish the vessel caught. It did not process any fish caught by any other vessel." The regulations establish that none of the work Wyatt was hired to do on the fish went beyond "first processing." 29 C.F.R. §§ 784.133, 784.135. Likewise, the regulations state that "maintenance work performed by members of the fishing crew during the course of the trip on the fishing boat would necessarily be a part of the fishing operation, since the boat itself is as much a fishing instrument as the fishing rods or nets." 29 C.F.R. § 784.122.
 
 
 6
 The district court also correctly dismissed the Jones Act and unseaworthiness claims. Although the quantum of negligence needed for a Jones Act claim is very slight, Havens v. F/T Polar Mist, 996 F.2d 215, 218 (9th Cir.1993), Wyatt produced no evidence at all of negligence. He testified that "since I was in a hurry, I kind of hit my head." That does not make his head injury someone else's fault. He said he talked to "a lady on the Royal King" who told him that "there was a cushion over that part of the door before," but he produced no competent evidence for the existence of a cushion or negligence in removing or failing to replace it--The hearsay from the "lady on the Royal King" was not cognizable evidence under Federal Rule of Civil Procedure 56(e).
 
 
 7
 Wyatt also had the burden of proof on unseaworthiness, Ramos v. Matson Navigation Co., 316 F.2d 128, 131 (9th Cir.1963). He did not produce evidence that the door failed to meet the standard of "reasonable fitness." Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). So far as the record indicates, it was an ordinary hatch or door on a vessel.
 
 
 8
 The district court also correctly dismissed Wyatt's maintenance and cure claim. Had Wyatt hurt his head during the voyage, and asked for medical care and room and board during his convalescence, the case would be different. The vessel provided Wyatt with first aid for his scalp laceration, and he did not ask for anything more or indicate that he needed anything more. He testified in his deposition that, although he had headaches, "I never said nothing to nobody about having headaches from it." He quit working at sea, after the vessel left Dutch Harbor, but the vessel continued to provide him with room and board. When Wyatt left the vessel after returning to Dutch Harbor, he did not request medical care, of the vessel or anyone else. He also rejected the suggestion of vessel personnel who "told me to see Dr. Storey when I got back" and offered him a ticket to Seattle. Instead, he took another job in Dutch Harbor, one inconsistent with headaches from bumping his head on the hatch. He smashed his finger offloading a vessel on that job, went to the doctor, and did not tell the doctor that he had any headaches. Then he took another job, on another fishing vessel. The only evidence to establish any injury for which he would be entitled to maintenance and cure are Wyatt's own statements long afterward, that he had headaches from bumping his head on the Snow King. In the circumstances, his subsequent statements were insufficient to establish a genuine issue of fact. Radobenko v. Automated Equip. Corp., 520 F.2d 540, 544 (9th Cir.1975).
 
 
 9
 In addition, Wyatt concealed his medical condition when he obtained employment. On his employment questionnaire, he answered "no" to the question, "have you had ... severe headaches." But in his deposition, he admitted that he had had "migraine" headaches when he was younger. And he told Dr. Storey that he had a "long history of occipital headaches from stress," though he claimed they were different from (but not less severe than) the frontal headache he claimed in March of 1995. We have said, albeit in dictum, "Fraud may bar maintenance and cure where a seaman conceals a medical condition that he knows or should know is related to the illness or injury for which maintenance and cure are requested." Omar v. Sea-Land Service, Inc., 813 F.2d 986, 990 (9th Cir.1987). We do not intimate that any incorrect statement on a medical questionnaire entitles a vessel owner to avoid paying maintenance and cure, but in the circumstances of this case, the false statement adds to the implausibility of Wyatt's claim that he had headaches from bumping his head on the vessel hatch. Where the record as a whole could not lead a rational trier of fact to find for the party bearing the burden of proof, there is no genuine issue of fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).
 
 
 10
 AFFIRMED.
 
 
 
 **
 The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the 5th Circuit, visiting judge
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3