317 F.2d 270
 MIDWEST TOWING COMPANY, Inc., Petitioner-Appellant,
v.
Richard M. ANDERSON, Administrator of the Estate of Robert Anderson (Bobby Lynn Anderson), Deceased, and Mary T. Lusk, Administratrix of the Estate of Pleasant M. Lusk, Jr., Deceased, Respondents-Appellees.
 No. 13911.
 United States Court of Appeals Seventh Circuit.
 May 17, 1963.
 
 Edward B. Hayes, Chicago, Ill., William K. Johnson, Chicago, Ill., Lord, Bissell & Brook, Chicago, Ill., of counsel, for appellant.
 James A. Dooley, Chicago, Ill., for appellees.
 Before DUFFY, CASTLE, and SWYGERT, Circuit Judges.
 SWYGERT, Circuit Judge.
 
 
 1
 On March 24, 1955, the motor vessel Anna S. Cooper, pushing a tow of four empty barges, struck the Hickman-Lockhart highway bridge at or near mile 100.5 in the Tennessee River and sank with the resultant loss of four lives. Claims were filed on behalf of two of the deceased crew members to recover for their wrongful deaths based on petitioner's liability for negligence and breach of duty under the Jones Act, 46 U.S.C. § 688. Petitioner, Midwest Towing Company, owner of the Anna S. Cooper, claimed exoneration from liability or, in the alternative, limitation of its liability under 46 U.S.C. § 183(a).[1]
 
 
 2
 The district court denied petitioner's claims for exoneration and limitation of liability and entered money judgments for the administrators of the decedents' estates. The opinion of the district court is reported in 203 F.Supp. 727 (1962). This appeal followed.
 
 
 3
 Petitioner does not contest the district court's denial of exoneration; it limits its appeal to the district court's determination that it was not entitled to limitation of liability.
 
 
 4
 We agree with the district court.
 
 
 5
 Sometime prior to March 21, 1955, the Cooper had picked up the four empty barges at a plant just below Sheffield, Alabama, on the Tennessee River and was proceeding down river with them. The Tennessee River was at high water stage during this period. The tow reached the Pickwick Lock and Dam on March 21st, and stayed tied up there until around 8:00 a. m. of the 24th. Haupt, Midwest Towing's president, testified that Captain Yates, the Cooper's master, telephoned him on the morning of March 22nd and that Haupt told Yates to "remain tied up until the condition improved to where he thought it was practicable to run."
 
 
 6
 One of petitioner's exhibits shows the following as to the cubic feet of water per second being discharged at Pickwick Dam:
 
 
 7
 Date Pickwick Dam
 -------------------------------
 March 21 161,500 c.f.s.
 March 22 330,700 c.f.s.
 March 23 310,100 c.f.s.
 March 24 283,000 c.f.s.
 
 
 8
 This exhibit shows that conditions were somewhat improved on the morning of March 24 when the Cooper again got under way. She navigated successfully from 8:00 a. m. to approximately 9:30 p. m. on March 24th, when it reached the vicinity of the Hickman-Lockhart bridge, also referred to in the record as the Johnsonville Bridge, which was approximately 106 miles from the Pickwick Dam. It was here that the unfortunate collision of the Cooper with the bridge, resulting in the loss of four lives and the sinking of the Cooper, occurred.
 
 
 9
 Reference is made to the district court's opinion for a full discussion of the condition of the Cooper which led to the trial judge's conclusion that the Cooper was unseaworthy and that this unseaworthiness "contributed to causing the deaths of the claimants."
 
 
 10
 "The rule is plain that the decision of the trial court in admiralty cases upon controverted questions of fact will not be disturbed by the appellate court unless it is clearly against the weight of the entire body of evidence. The phrase `findings of fact' may, and in this case we think does, reflect the ultimate judgment of the court on a mass of details involving not merely trustworthiness of witnesses but other appropriate inferences that were drawn from living testimony which elude proof in a cold appellate record. A finding of fact depends on the nature of the materials on which the finding is based and the expression itself may be a summary characterization of complicated factors of varying significance for judgment. Thus, a conclusion by way of reasonable inference from the evidence, is a `finding of fact.'" Griffith v. Gardner, 196 F.2d 698, 701 (9th Cir. 1952).
 
 
 11
 Petitioner bases its argument in this appeal on the proposition that nothing short of privity and knowledge of the owner of the cause of a disaster can bar limitation of liability under 46 U.S. C. § 183(a), even where an action for unseaworthiness exists. Petitioner urges that the sole cause of the accident resulting in loss of life was the negligence of the master in taking the Cooper out in flood-like conditions for which she was not intended or suited. It also contends the Cooper was seaworthy in the sense that she was able to withstand the ordinary perils of her service.
 
 
 12
 We believe the evidence and the inferences drawn therefrom by the trial judge substantially support the denial of limitation of liability even under the decisions cited by petitioner.
 
 
 13
 The master is dead. We cannot say that the faults in the reversing mechanism or the steering mechanism found by the district court or the other evidence of unseaworthiness did not contribute to the accident. The fact that the Cooper was navigated successfully for more than 100 miles on the day of the accident indicates that the master was not totally reckless in committing the Cooper to operation on March 24th. It is a fair inference from the facts that the master was the victim of a combination of circumstances — current, cross-wind, faulty reversing and steering mechanisms and faulty judgment — all of which contributed to the collision of the Cooper with the bridge. Certainly an owner cannot commit a craft to river traffic and then limit its liability merely by saying that the accident would not have happened had the master not tried to operate in other than placid, pool-level, water conditions.
 
 
 14
 The finding of negligence on the part of the master does not negate the findings made by the district court that unseaworthiness also contributed to the cause of the disaster. The finding of negligence might well have been grounded on the master's knowing operation of an unseaworthy vessel. The precise reason for the finding of negligence was not spelled out in the district court's opinion simply because petitioner admitted and urged the master's negligence primarily in an effort to establish that negligence as the sole cause of the accident and thus limit its liability.
 
 
 15
 There is substantial evidence to show that the unseaworthiness of the Cooper was within the privity and knowledge of the petitioner and hence, its application for limitation of liability was properly refused.
 
 
 16
 The judgment is affirmed.
 
 
 
 Notes:
 
 
 [1]
 46 U.S.C. § 183(a) reads:
 "(a) The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending."