Kathleen Molnes **WALSTON**, Appellant,

v.

Thelma **LAMBERTSEN**, Appellee.

No. 19253.

United States Court of Appeals Ninth Circuit.

Aug. 5, 1965.

Donald J. Horowitz, Schroeter & Farris, Seattle, Wash., for appellant.

Robert V. Holland, Bogle, Bogle & Gates, Seattle, Wash., for appellee.

Before MERRILL, DUNIWAY and ELY, Circuit Judges.

ELY, Circuit Judge:

Appellee and her husband were the owners of a seagoing vessel known as "Frank L. III". They had caused the vessel to be constructed in 1955, and it was built in the knowledge that it would be used for two purposes, namely, sports fishing and crab fishing. It was built of wood, had a gross tonnage of thirteen tons and a net tonnage of twelve tons, and its dimensions were 38.8 feet in length, 14 feet in width, and 3.4 feet depth in hull. On February 21, 1959, the vessel sank off the coast of the State of Washington. She was engaged in crab fishing operations at the time, and her master and the only two crewmen were drowned. Appellant, the widow of one of the crewmen, instituted an action for damages in a Washington state court alleging that the loss of her husband's life resulted from unseaworthiness of the vessel and from negligence in its maintenance, construction, and operation.

Appellee, whose husband and co-owner of the vessel died following the tragedy at sea, filed a petition in the court below seeking, under the provisions of Sections 183–189 of Title 46 U.S.C. (1958), to exonerate herself from liability or to limit the extent of her liability. Issue was joined, trial was had, and a judgment exonerating the petitioner from liability was entered upon, and based upon, the trial court's conclusions of law as follows:

"CONCLUSIONS OF LAW

1. There is no evidence to establish negligence on the part of the petitioners Lambertsen nor of the master or crew of the vessel 'Frank L. III'.

2. There is no evidence to establish unseaworthiness of the vessel at or prior to the time of the loss.

3. There is no evidence of any negligence, incompetence or other defect in the planning and construction of the vessel or in any changes subsequent thereto to establish ·that it was unseaworthy at the time of departure on its last voyage.

4. There is no presumption of unseaworthiness of the vessel since there is no evidence indicating either negligence or unseaworthiness in one or more particulars at or prior to the time of the loss.

5. Neither the petitioner, Thelma Lambertsen, nor her deceased husband, Frank L. Lambertsen, had the slightest privity or knowledge of any condition of unseaworthiness or negligence which might be alleged to have existed with respect to the vessel and which might be alleged to have been the proximate cause of the loss."

Appellant seriously and ably contends that the trial court's conclusions are not supported by the evidence, but we, convinced to the contrary, must affirm.

The actual cause of the sinking of the vessel could not be proved. It disappeared on a day when only a light breeze was blowing and when the seas were calm, the weather was clear, and the visibility was about six miles. When last seen by other fishermen on other boats in the area of their common crabbing operations, one of the fishermen observed that there was "nothing out of line" as to the loading of the vessel and that it "was being maneuvered in its normal manner". This fisherman, the master of his own vessel, observed that the "Frank L. III" "was going along just like a duck, easy, had all the time of the world, it appeared". The master of another crab fishing boat, produced as a witness by the appellant, when asked whether or not on the day of the sinking he had noticed the "Frank L. III" "heading up to any extent while picking up pots", replied, "Absolutely not. If I would have, we would have went over there".

Appellant endeavored to support her claim by proving that for the "Frank L. III's" use as a crab fishing vessel, a live crab tank, designed to contain

5000 pounds of crabs, had been installed on the deck of the vessel and had adversely affected its seagoing stability. It was urged, in effect, that the trial court might infer that the vessel's sinking resulted from negligence in the alteration, by addition, in the ship's equipment and that the additional weight of the crab tank with an undetermined amount of crabs, plus the weight of crab pots, created an unseaworthy condition which proximately caused the capsizing and sinking of the vessel. The appellant contends that the district court erroneously failed to apply the doctrine of *res ipsa loquitur* to her advantage. Our court has held that if a claimant establishes that a vessel is unseaworthy, the trial court may presume that the unseaworthiness was the proximate cause of the sinking, otherwise unexplained, of a vessel in calm seas. Admiral Towing Co. v. Woolen, 290 F.2d 641, 1961 Am.Mar.Cas. 2333 (9th Cir.). The appellant relies heavily upon this decision, and she also directs our attention to Roth v. Bird, 239 F.2d 257, 1957 Am.Mar.Cas. 112 (5th Cir. 1956); The Cleveco, 154 F.2d 605, 1946 Am.Mar.Cas.

933 (6th Cir.); Sabine Towing Co. v. Brennan, 72 F.2d 490, 1934 Am.Mar.Cas. 1122 (5th Cir.), cert. denied, 293 U.S. 611, 55 S.Ct. 141, 79 L.Ed. 701, 1934 Am. Mar.Cas. 1414; and Petition of Midwest Towing Co., 203 F.Supp. 727, 1962 Am. Mar.Cas. 2438 (E.D.Ill.), aff'd sub nom. Midwest Towing Co. v. Anderson, 317 F. 2d 270, 1963 Am.Mar.Cas. 2376 (7th Cir.). A review of the opinions in these cases and all others which might seem somewhat analogous to the case at bar makes it clear that the presumption which appellant would apply has been indulged only when the claimant has been able to establish to the satisfaction of the trial court that the vessel was unseaworthy at the time it departed on its last voyage. The sea itself contains many hazards,[1] and an inference of liability of the shipowner for the mysterious loss of his vessel should not be lightly drawn. The court below obviously and properly believed that there could be no foundation for the inference absent satisfactory proof of an unseaworthy condition which might reasonably be expected to relate directly to the sinking of the vessel.[2]

1. The existence of one hazard is shown by the following testimony:

"Q. Mr. Stedman, from your experience in the area where this fishing was going on at the time, what is the situation with respect to the general situation with respect to debris in the water or deadheads or whatever types of things are in the water as foreign material?
A. Well, this is a question that has been asked everybody, about deadheads, or did you see any deadheads at this particular time, but driftwood and deadheads are a common occurrence. Every day—there isn't one day, not one day out of the year that you can go out of Grays Harbor and not have quite a number of deadheads.
Q. What is a deadhead?
A. It's a log or even a piece of wood that sinks partially under the water and partially out of the water. When there is a little chop, they are very hard to see.
Q. Have you had any experience or encounters with that type of thing?
A. Yes. With the vessel that we are discussing, I holed it one time.
Q. You mean by that you put a hole in it?

A. Yes.
Q. Have you had any other experiences with this type of debris in that area?
A. Yes, I had an experience with my own vessel that I have now, but I have been very fortunate; I have hit them right, so I haven't done any harm except to my wheel. I had to have my wheel straightened out.
THE COURT: Are these experiences in the general vicinity of where the fishing was, the crabbing was going on the day of this accident?
THE WITNESS: Yes. Where this North Whistler was that the gear was near is a tide rip that comes from the harbor, that runs around the harbor, and that general area is quite noted for sticks and deadheads. We had a boat this summer that was busted wide open there, two, in fact, but one of them was very lucky. They got the Coast Guard boat on each side and managed to save it."

2. The "Frank L. III" was not equipped with a life boat, but it would hardly be reasonable to infer that the absence of such equipment proximately contributed to the sinking of the vessel. The body

In the admiralty proceeding in which a shipowner seeks to exonerate himself from liability or to limit his liability, the burden of proving negligence or unseaworthiness rests upon the claimant. Lieberman v. Matson Navigation Co., 300 F.2d 661, 1962 Am.Mar.Cas. 1281 (9th Cir.); Ramos v. Matson Navigation Co., 316 F.2d 128, 1963 Am.Mar.Cas. 1134 (9th Cir.). Findings of lack of negligence and of seaworthiness may be upheld as not clearly erroneous either because affirmative evidence supports the findings or because sufficient evidence to the contrary has not been presented by the one upon whom rests the burden of proof. Ramos v. Matson Navigation Co., supra. In our review of the evidence, we have noted that the history of the construction of the "Frank L. III" and its alteration for crab fishing purposes was fully developed. It was shown that in the construction stage, it was planned that the vessel be made adequate for both sports fishing and crab fishing purposes. The trial judge, in announcing his conclusion, remarked,

> "The vessel was built by one of the best-known boat builders in the Northwest, highly competent and experienced, and the evidence shows that the builder took special precautions to make the vessel suitable for the combined purposes indicated. The adding of the 'live tank' to the vessel was at the instance of a competent and long-experienced skipper, accomplished by a construction firm of good repute, and there is not the slightest indication that it was improper or negligently done in any particular."

There was evidence that the boat, while engaged in prior crab fishing operations and when much more heavily loaded than it would appear to have been at the time of its loss, safely rode out heavy seas. Considering the whole body of testimony, we are of the opinion that the trial court was fully justified in arriving at the determinations which are fatal to the contentions of appellant.

In Ramos v. Matson Navigation Co., supra, Judge Duniway, for our court, wrote, 316 F.2d at page 131, 1963 Am.Mar.Cas. at 1137,

> "We are committed to the proposition that a finding as to negligence, or as to unseaworthiness, is one of fact, not to be upset by us unless clearly erroneous. (See, as to negligence: Pacific Tow Boat Co. v. States Marine Corp., 9 Cir., 1960, 276 F.2d 745; Albina Engine & Mach. Works v. American Mail Line, Ltd., 9 Cir., 1959, 263 F.2d 311; Amerocean S.S. Co. v. Copp, 9 Cir., 1957, 245 F. 2d 291; and as to unseaworthiness: Admiral Towing Co. v. Woolen, 9 Cir., 1961, 290 F.2d 641.)"

Here, we have pointed to evidence which together with, if not apart from, other persuasive testimony which appears in the record was adequate to support affirmatively the conclusions of absence of the shipowners' negligence and absence of an unseaworthy condition in the vessel.

In the court below, the thrust of appellant's case was to the proposition that the "Frank L. III" was unseaworthy. As we analyze the evidence, it was entirely insufficient to support a finding of negligence, had such a finding been made. It is only upon the basis of negligence that a claim arising from a seaman's death within territorial waters can rest. Lindgren v. United States, 281 U.S. 38,

---

of appellant's intestate, when discovered, was floating in a life jacket. In the absence of more proof than was available to appellant, to infer that her intestate's life would have been saved if a life boat or a life raft had been available would be to indulge in mere conjecture. The Princess Sophia, 61 F.2d 339, 1932 Am.Mar.Cas. 1562 (9th Cir.) See Powers v. New York Central Railroad Co., 251 F.2d

813, 1958 Am.Mar.Cas. 614 (2d Cir.) and Wilhelm Sea Foods Inc. v. Moore, 328 F.2d 868, 1964 Am.Mar.Cas. 2264 (5th Cir.), affirming per curiam, Moore v. The O/S Fram, 226 F.Supp. 816, 1964 Am.Mar.Cas. 2265 (S.D.Tex.1963), wherein the evidence justified findings that lack of adequate equipment bore a direct causal relationship to the deaths of the seamen.

50 S.Ct. 207, 74 L.Ed. 686, 1930 Am. Mar.Cas. 399; Gillespie v. United States Steel Corp., 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199, 1965 Am.Mar.Cas. 1 (1964). In our court, the appellant urges for the first time that her claim be evaluated in the light of the so-called Death on the High Seas Act. 46 U.S.C. § 761 et seq. Suffice it to say that liability under that Act must also rest upon adequate proof of negligence or unseaworthiness.[3]

Our conclusion that the appellee was properly exonerated from liability renders it unnecessary to consider the question as to whether or not her evidence supported the district court's conclusion that neither she nor her husband was privy to or knowledgeable of any alleged negligence or condition of unseaworthiness.

Affirmed.

---

[3]. Appellant did not prove that the vessel sank beyond a marine league from shore and thus without the territorial waters of the United States. Moreover, while the Death on the High Seas Act confers jurisdiction "in the district courts of the United States, in admiralty," and prescribes a limitation period of two years, the appellant instituted her suit in the state court almost twenty-eight months after the vessel sank.