477 F.2d 1267
 Petition of NORTHERN FISHING & TRADING COMPANY, INC., a
corporation, owners of the FISHING VESSEL NORTH SEA, and
Aleutian King Crab, Inc., a corporation, charterer of the
fishing vessel North Sea, for Exoneration from or Limitation
of Liability, Petitioners-Appellees,
v.
Sophie M. GRABOWSKI, Individually, as personal
representative of the Deceased, Edwin T.
Grabowski, and as guardian of the Estate
of the minor children of Edwin
T. Grabowski,
Claimant-Appellant.
 No. 71-2475.
 United States Court of Appeals,
Ninth Circuit.
 April 23, 1973.
Rehearing Denied June 21, 1973.
 
 Gale P. Hilyer, Jr. (argued), Hilyer & Levinski, Seattle, Wash., for claimant-appellant.
 Donald P. Marinkovich (argued), Detels, Draper, & Marinkovich, Robert V. Holland (argued), Bogle, Gates, Dobrin, Wakefield & Long, Seattle, Wash., for petitioners-appellees.
 OPINION
 Before CARTER, CHOY and GOODWIN, Circuit Judges.
 JAMES M. CARTER, Circuit Judge:
 
 
 1
 This case arises from the loss of the wooden fishing vessel NORTH SEA off the southwest coast of Unimak Island, Alaska, on December 12, 1968. Captain Grabowski, the skipper, and two other crew members were drowned. The deck hand, Golodoff, survived.
 
 
 2
 Appellant Sophie M. Grabowski, the widow of the Captain, was the claimant, individually, and as the personal representative of Captain Grabowski, and as the guardian of their minor children.
 
 
 3
 The appellees, petitioners for exoneration from or limitation of liability, are Northern Fishing & Trading Company, Inc., the owners of the NORTH SEA, and Aleutian King Crab, Inc., the charterer of the NORTH SEA.
 
 The Issues
 
 4
 Although appellant raises other contentions to some of which we shall later advert, we view the important issues to be these:
 
 
 5
 1. Does the evidence support Finding No. 20 that the loss of the vessel resulted from the factors set forth in Findings Nos. 16 through 19?
 
 
 6
 2. Does the evidence support Finding No. 20 that the claimant failed to establish by a preponderance of the evidence a breach of the warranty of seaworthiness implied in the charter to Captain Grabowski of July 1, 1968, or that unseaworthiness of said vessel was a proximate cause of his death?
 
 
 7
 3. Did the trial court properly place the burden of proof on the claimant, appellee? We affirm.
 
 
 8
 In 1967, Northern Fishing bareboat chartered the vessel to Captain Grabowski for a term from July 20, 1967, to April 30, 1968. On January 1, 1968, Northern Fishing again bareboat chartered the vessel to Aleutian for a term from January 1, 1968, to December 31, 1968.
 
 
 9
 On July 1, 1968, Aleutian sub-bareboat chartered the vessel to Captain Grabowski for the period of July 1, 1968, to April 30, 1969. Thus, at the time of the loss of the vessel, Aleutian had a bareboat charter from Northern Fishing, and Captain Grabowski had a sub-bareboat charter from Aleutian.
 
 
 10
 The only direct evidence as to the storm and the loss of the vessel were two depositions of the surviving crew member, Golodoff.
 
 
 11
 We summarize briefly the events leading to the loss of the vessel. It had been fishing for crab in Unimak Pass, off the southwestern coast of Unimak Island. The vessel had been returning for anchorage at night in either Akun or Trident Bay on the southwest side of Unimak Pass.
 
 
 12
 On December 11, 1968, the vessel moved its fishing gear to the slime banks about ten miles from Cape Sarichef, off the southwest coast of Unimak Island. After a day of fishing, adverse weather was encountered in the area of Cape Sarichef. The Captain elected to proceed for anchorage at Urilla Bay on the north central coast of Unimak Island. During the night and early morning the wind increased and swung around more out of the northwest, so that Urilla Bay no longer provided effective protection from the storm. The vessel left the Bay on December 12, proceeded northwesterly to deep water about seven or eight miles northwest of Cape Sarichef, then turned southwesterly "on a 'jogging' zigzag course." The storm had increased in volume, with winds from the west-northwest.
 
 
 13
 The trial court found that the storm was unusually severe, with turbulence not experienced during that particular season or for several years prior thereto. There was a full gale, with mountainous seas and winds of hurricane force.
 
 
 14
 The following five events preceded the loss of the vessel:
 
 
 15
 (1) Before the vessel left Urilla Bay, a water pipe broke in the engine room, partially flooding the bilge. The crew made emergency repairs.
 
 
 16
 (2) While proceeding southwesterly, the vessel took a sea which knocked off the forward starboard bulwark. In order to allow the crew to remove the debris, the Captain put his stern to the storm and proceeded toward Unimak Island. After the debris was removed, the Captain completed a 360~ turn and again proceeded southwesterly.
 
 
 17
 (3) About an hour later another sea knocked off the false bridge in front of the pilot house. Again the vessel's stern was put to the storm and the debris removed.
 
 
 18
 (4) As the vessel started again to resume a southwesterly course, a monstrous sea entirely wiped out the pilot house. The steering controls were gone; an electrical short charged the hand rails to the engine room with electricity; and a break in the ammonia pipe system flooded the engine room with ammonia. The propelling engine quit and the vessel was a powerless hulk.
 
 
 19
 (5) An hour or so later, as the vessel took more water and sank lower in the sea, the crew attempted to launch the life raft and were swept away by the waves. Golodoff, who survived, and the body of Captain Grabowski, were found on the southwest coast of Unimak Island at Sennet Point.
 
 
 20
 We note that the loss of the vessel did not result from destruction or disintegration of the hull, but from the events above and the seas taken upon and into the vessel.
 
 The Findings
 
 21
 The pertinent findings of the trial court were as follows:
 
 
 22
 "11. That in accordance with paragraph 15 of the admitted facts of the Pretrial Order, the only relationship between Northern Fishing & Trading Company, Inc. and Aleutian King Crab, Inc. on one hand and Captain Grabowski on the other was that created in the demise charters of the vessel NORTH SEA, and there was no employer-employee relationship between the aforesaid parties at any time.
 
 
 23
 12. That on December 12, 1968, the fishing vessel NORTH SEA was lost at sea off the coast of Unimak Island, Alaska in the vicinity of Cape Sarichef during a storm that was unusually severe, the turbulence of which had not been experienced during that particular season and for several years prior thereto. The said storm, which could reasonably have been anticipated at that time of year, was a full gale with mountainous seas and winds gusting to hurricane force.
 
 
 24
 ******
 
 
 25
 * * *
 
 
 26
 15. That Edwin T. Grabowski had greater knowledge of the condition, strengths and weaknesses of the NORTH SEA than any other person and did not at any time rely on any warranty implied in the charter. That with such knowledge of the vessel he had undertaken repeated charters of the same.
 
 
 27
 16. That Captain Grabowski was an ambitious, courageous crab fisherman who had no fear of the sea. That during the period of charter he subjected the vessel to unreasonable use under extreme conditions of weather and sea and without proper regard for his own safety or that of the vessel.
 
 
 28
 17. That Captain Grabowski could have fully bunkered his vessel by taking on additional fuel to the full capacity of her tanks at Dutch Harbor on December 9, 1968, but he did not do so.
 
 
 29
 18. That while in the vicinity of Urilia [sic] Bay on December 12, 1968, Captain Grabowski was of the opinion that the vessel did not have sufficient fuel to permit his taking protective action by 'jogging' or otherwise proceeding seaward into deep water in a direction where the actions of wind and sea would have presented less of a threat to the safety of the NORTH SEA.
 
 
 30
 19. That instead of navigating his vessel as set forth in the last preceding paragraph he proceeded into the area of Unimak Pass and through an area where the combined conditions of wind, sea and tide exposed the NORTH SEA to extra hazardous and more violent conditions, and subjected the vessel to the utmost peril.20. That the loss of the NORTH SEA proximately resulted from the factors set forth in paragraphs 16 to 19, inclusive, and claimant has failed to establish by a preponderance of the evidence that breach of a warranty of seaworthiness implied in the charter of July 1, 1968, the charter in effect at the time of the loss of the NORTH SEA, or that unseaworthiness of said vessel was a proximate cause of the death of Captain Grabowski."
 
 Discussion
 
 31
 A holder of a bareboat charter, who is the operator of the vessel so chartered, has a non-delegable duty to his employees to furnish a seaworthy vessel. Reed v. Yaka, 373 U.S. 410, 415, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963). Such a person was Captain Grabowski, but this leads us nowhere, since his widow and personal representative is the claimant and no claims are before us against Grabowski's estate in behalf of the two crewmen who died.
 
 
 32
 "Whether a bareboat charter absolves the owner from liability on its warranty of seaworthiness is a question we also reserved in Guzman v. Pichirilo, 369 U. S. 698, 700 [82 S.Ct. 1095, 8 L.Ed.2d 205] (1962). We do not reach the question here." Reed v. Yaka, supra, p. 411, n. 1, 83 S.Ct. p. 1351.
 
 
 33
 Nor do we need to reach it here, since Finding No. 20, expressly assumes such an implied warranty existed in the charter of July 1, 1968, from Aleutian to Captain Grabowski.
 
 
 34
 In this case we have the customary standard for review. Findings of fact as to the cause of the accident, here the loss of the vessel, will not be set aside unless clearly erroneous. The evidence must be reviewed in the light most favorable to the prevailing party and that party must be given the benefit of all inferences that may reasonably be drawn from the evidence. Sutherland v. Hudson Waterway Corp. (9 Cir. 1972) 468 F.2d 628.
 
 
 35
 The Findings of Fact Were Not Clearly Erroneous
 
 
 36
 As to Findings Nos. 16 through 19, without detailing the evidence, we conclude that the findings were not clearly erroneous.
 
 
 37
 As to the matter of unseaworthiness, considered in Finding No. 20, we have heretofore detailed the events leading to the loss of the vessel.
 
 
 38
 The testimony of the sole surviving crew member, Golodoff, described these events. There is no indication in the record that the vessel was taking water by reason of rotting planks or teredo holes. After the wheel house and false bridge had been wiped out by a series of mountainous waves, the vessel continued to take seas which eventually resulted in an extreme list during the last two-hour period.
 
 
 39
 Appellant relies almost solely on the testimony of Captain A. F. Raynaud, who inspected the vessel some three years and ten months before the loss. Appellant cites only a portion of his testimony in her Appendix "B". That portion shows that Captain Raynaud examined only three or four planks. He noted some infestation in the horn timber and the lowest strake. But various parts of Raynaud's testimony were ignored by appellant, including his comment that the rot in the keel did not appear to be too extensive; that he did not make any inspection above the main deck; that the keel was essentially sound; that he examined only two or three planks on the starboard side out of the eighteen or twenty-four; that his notes indicated only "scattered bug holes"; that the stem was in good, sound condition and that he had no way of knowing about the major structural members under the deck.
 
 
 40
 There was other evidence in the record. Some crew members observed defects and others observed none. The same is true as to the witnesses who were not members of the crew. Suffice it to say that although the evidence of the vessel's condition was in conflict, it was sufficient to justify our conclusion that the trial court's findings were not clearly erroneous.
 
 II.
 
 41
 The Trial Court Applied the Proper Burden of Proof to the
 
 Claimant
 
 42
 By necessary implication, Finding No. 20 placed the burden of proof on the claimant to prove breach of the warranty of seaworthiness, and that unseaworthiness was the proximate cause of the loss of the vessel. The fact that this conclusion of law appears in a finding of fact does not change the situation.
 
 
 43
 Appellant cites only In re American Dredging Company (3 Cir. 1956) 235 F. 2d 618, rev'd on other grounds sub nom. Kernan v. American Dredging Co., 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958). There, in a proceeding for exoneration, the Circuit stated that the district court "made findings of fact and concluded the petitioner [for exoneration] had sustained its burden of establishing that both it [the owner] and the master and crew of the tug were free from negligence and that the tug and tow were not unseaworthy." 235 F.2d at p. 619. The Circuit cited the district court's decision, In re American Dredging Co. (E.D.Pa.1956) 141 F.Supp. 582, and held that the findings of fact and legal conclusions were correct. No cases were cited, nor were any cases cited by the district court on the question of burden of proof.
 
 
 44
 Walston v. Lambertsen (9 Cir. 1965) 349 F.2d 660, 663, cert. denied, 382 U.S. 980, 86 S.Ct. 553, 15 L.Ed.2d 470 (1966), states: "In the admiralty proceeding in which a shipowner seeks to exonerate himself from liability or to limit his liability, the burden of proving negligence or unseaworthiness rests upon the claimant." We could well stop at this point and rest upon the above holding except for the fact that the two cases cited in support of the statement are not exoneration or limitation of liability cases.[1]
 
 
 45
 Appellees quoted the following from Gilmore & Black, The Law of Admiralty, 705, n. 106 (1957):
 
 
 46
 "While the shipowner must prove his freedom from privity or knowledge, the burden of proof as to negligence or other ground on which liability is based is of course on the libellants. See 3 Benedict, Admiralty Sec. 489 (6th ed. 1940); Robinson, Admiralty 942 (1939).
 
 
 47
 ******
 
 
 48
 * * *
 
 
 49
 There is indeed language in the opinions to justify the commentator's statement. It is believed that the rule should be as in the limitation cases: burden on the libellant to show negligence or fault; burden on the owner to show his (personal) freedom from 'design or neglect.' "
 
 
 50
 Benedict states that the burden is on the libellant [claimant] to prove negligence or other ground on which liability is based. 3 Benedict, The Law of American Admiralty, Sec. 524, pp. 557-58, and Sec. 526, p. 560.
 
 
 51
 1 Edelman, Maritime Injury and Death 619 (1960) flatly states: "(1) the claimant has the burden of proving negligence or unseaworthiness; (2) then the shipowner must prove the absence of privity or knowledge." (Footnotes omitted.)
 
 
 52
 One of the cases Edelman cites for the statement is The 84-H (2 Cir. 1923) 296 F. 427, 431, cert. den. sub nom. Randolph v. Bouker Contr. Co., 264 U.S. 596, 44 S.Ct. 454, 68 L.Ed. 867 (1924), which states:
 
 
 53
 "The whole doctrine of limitations of liability presupposes that a liability exists which is to be limited. If no liability exists there is nothing to limit. And in a proceeding to limit liability two duties are imposed upon the court. The first is to ascertain whether any liability exists. If it is found to exist the second duty arises, which is to ascertain whether the loss or damage was occasioned or incurred without the 'privity or knowledge' of the owner of the ship. If no liability is found to exist, the absence of all liability is to be decreed, and there the matter ends. If, on the other hand, liability is found and loss or damage is shown, and was not occasioned or incurred with 'privity or knowledge' of the shipowner, the limitation of liability should be decreed. See the decision of this court in The Rambler, 2 Cir., 290 F. 791, 1923 A. M. C. 618. Upon the issue of negligence, the claimant has the affirmative (The Titanic, 2 Cir., 225 F. 747, 748, 141 C.C.A. 19), and if negligence is found the petitioner has the burden of proof upon the further issue of the petitioner's privity and knowledge as was held by this court in Re Reichert, 2 Cir., 251 F. 214, 217, 163 C.C.A. 370."
 
 
 54
 The 84-H, supra, is a leading case for the proposition that in an exoneration or limitation case the burden is on the claimant to prove negligence or unseaworthiness. It has been followed in numerous cases: Binstock v. Friedman (2 Cir. 1964) 330 F.2d 267, 268; Southern Pacific Co. v. United States (2 Cir. 1934) 72 F.2d 212, 215; In re Pennsylvania R. Co. (2 Cir. 1931) 48 F.2d 559, 563, cert. den. sub nom. Long-Beach-onthe-Ocean v. Pennsylvania R. Co., 284 U. S. 640, 52 S.Ct. 21, 76 L.Ed. 544 (1931); In re Trawler Snoopy, Inc. (S.D.Me. 1967) 268 F.Supp. 951, 953; In re Marina Mercante Nicaraguense S.A. (S.D.N. Y.1965) 248 F.Supp. 15, 19, modif., 364 F.2d 118 (2 Cir. 1966), cert. den., 385 U.S. 1005, 87 S.Ct. 710, 17 L.Ed.2d 544 (1967); The Suduffco (S.D.N.Y.1929) 33 F.2d 775, 776. See Commercial Molasses Corp. v. New York Tank Barge Corp., 314 U.S. 104, 108, 110, 62 S.Ct. 156, 86 L.Ed. 89 (1941).
 
 
 55
 There is presented here no issue as to the proper order of proof. The appellant, as claimant, had the benefit of the implied warranty of seaworthiness. But she still had the ultimate burden of proof, after the conclusion of the testimony, to show a breach of that warranty or that unseaworthiness of the vessel was the proximate cause of the loss of the vessel. This she failed to do.
 
 
 56
 We conclude that the trial court applied the proper burden of proof.
 
 III.
 Other Contentions
 
 57
 We have held not to be clearly erroneous Finding No. 20, to the effect that the claimant had not sustained her burden of proof (1) that there was a breach of the implied warranty of unseaworthiness, and (2) that unseaworthiness of the vessel was a proximate cause of the death of Captain Grabowski. We have held that the court properly placed the burden of proof on the claimant.
 
 
 58
 Accordingly, appellant's other contentions below, though interesting, have no merit:
 
 
 59
 (1) The statement in Finding No. 9, that the charter to Captain Grabowski included an agreement to hold the petitioner harmless against any claim arising out of his operation of the vessel.
 
 
 60
 (2) Finding No. 15, that Captain Grabowski did not at any time rely on any warranty implied in the charter. See Clarke S.S. Co. v. Munson S.S. Line (E.D.N.Y.1932) 59 F.2d 423, 427, aff'd, 64 F.2d 1011 (2 Cir. 1933) (per curiam), holding the charterer may waive the terms of a charter or a breach thereof.
 
 
 61
 (3) The contention that the trial court erroneously relied on the doctrine of assumption of risk.
 
 
 62
 (4) The reference in the trial court's oral decision (but not in his formal findings and conclusions) ". . . that the doctrine of caveat emptor applies with respect to all patent defects but not to latent defects." [This apparently in connection with the bareboat charter to Captain Grabowski.] See Sanford & Brooks Co. v. Columbia Dredging Co. (4 Cir. 1910) 177 F. 878, 882.
 
 
 63
 (5) The reliance on Walker v. Harris, (5 Cir. 1964) 335 F.2d 185, cert. den., 379 U.S. 930, 85 S.Ct. 326, 13 L.Ed.2d 342, which we do not find apposite.
 
 
 64
 The judgment is affirmed.
 
 
 
 [1]
 The first case cited, Lieberman v. Matson Navigation Co. (9 Cir. 1962) 300 F.2d 661, was an action under the Jones Act and for unseaworthiness, where the burden of proving negligence or unseaworthiness was properly placed on the seaman. The second case cited, Ramos v. Matson Navigation Co. (9 Cir. 1963) 316 F.2d 128, was an action for damages, based on unseaworthiness, and negligence under the Jones Act, and for maintenance and care, where again the burden of proof was properly placed upon the seaman. Accordingly, we must look elsewhere for authority for the proposition stated in Walston, supra