779 So.2d 609 (2001)
William DOLES and Blue Channel Fisheries, Inc., Appellants,
v.
KODEN INTERNATIONAL, INC., et al., Appellees.
No. 5D00-65.
District Court of Appeal of Florida, Fifth District.
March 2, 2001.
*610 James F. Cummins, Inverness, for Appellants.
Edward F. Ryan of Holland & Knight LLP, Chicago, IL, and Steven L. Brannock of Holland & Knight LLP, Tampa, for Appellee Litton Systems, Inc.
No Appearance for Appellee Koden International, Inc.
SAWAYA, J.
Two fishermen tragically died at sea. The third member of the crew fortunately survived. The estates of the decedents, Jason Palmore and Clifford Stanley, filed wrongful death actions and the survivor, Mark Mekelberg, filed a personal injury action against the Appellants who were the owners of the doomed vessel. The claims made by both estates were based on the doctrine of unseaworthiness, the Jones Act, 46 U.S.C.App. § 688, and the Death On The High Seas Act (DOSHA), 46 U.S.C.App. § 761 et seq. The claims made by Mark were based on the doctrine of unseaworthiness and the Jones Act. The Appellants settled these claims and brought a third party action for indemnity[1] against Litton Systems, Inc. (Litton), the manufacturer of an allegedly defective emergency signaling device which failed during the fateful odyssey of the crew after the boat sank.
The trial court entered an order dismissing the third party complaint with prejudice based on the decision in Bodzo v. Beech Aircraft Corp., 498 So.2d 446 (Fla. 3d DCA 1986), wherein the court held that indemnity is not available to the owner or consumer of a defective product because an owner or consumer cannot be vicariously or strictly liable to third parties for injuries caused by the product. Accordingly, the issue in this case is whether the Appellants, as owners of the defective signaling device manufactured by Litton, may be vicariously or strictly liable for the injuries the defective device caused to Mark and for the deaths of the decedents. If the Appellants may be held vicariously or strictly liable, indemnity is a remedy they may pursue to recover from Litton. See Houdaille Indus., Inc. v. Edwards, 374 So.2d 490 (Fla.1979). We reverse.
For case of discussion of this issue, this opinion will address the following in separate sections: 1) the factual background of this case; 2) the pleading requirements to state a cause of action for indemnity; 3) evolution of the doctrine of unseaworthiness into a rule of strict liability under admiralty law; 4) application of the unseaworthiness doctrine to the claims made pursuant to the Jones Act and DOSHA; and 5) the conclusion.

Factual Background
In order to determine whether dismissal is proper in the instant case, we must chronicle the events leading up to this tragic maritime accident from the facts alleged in the complaint.[2] At the time of the accident, the Appellants were the owners of the fishing vessel, Michelle Lee, *611 which was equipped with a Marine Satellite Emergency Position Indicating Radio Beacon manufactured by Litton. The Appellants allege that this device was properly installed on the vessel and registered with the appropriate authorities.
On April 3, 1993, the Appellants hired Mark as an independent contractor to captain the Michelle Lee on a fishing trip in the Gulf of Mexico. Mark hired Clifford and Jason as his crew and they set out on April 7 from Crystal River, Florida. The weather was calm and clear when they departed. They anchored the vessel approximately 70 miles off shore that evening and went to sleep. Hours later, they awoke and realized that the Michelle Lee was in danger because Mark had negligently anchored the vessel earlier that evening. The crew safely escaped by boarding a life raft, taking with them the emergency signaling device which they repeatedly attempted to engage. However, the device failed and never sent its life-saving signal to the Coast Guard. Mark finally tied the device to a cooler and released it from the life raft in the hopes that it would be discovered. The device has never been found and is presumed lost in the Gulf of Mexico. In the late hours of the night of April 9, Clifford and Jason died from exposure. Mark continued to drift in the life raft until he was rescued from his misery by a pleasure vessel on April 11.
In their claim for indemnity against Litton, the Appellants allege that the crew relied on the signaling device to function according to its intended purpose by sending a rescue signal to the Coast Guard, which has a reliable rescue program that responds to all signals made by such devices. The Appellants further allege that two men lost their lives and Mark suffered serious injuries because this device was defective and failed to perform the function for which it was intended. Appellants also allege that they were not negligent; they in no way caused the sinking of the vessel or the malfunction of the defective signaling device; and their liability is based on the theory that the Michelle Lee was unseaworthy because of the defective device manufactured by Litton.

Pleading Requirements To State A Cause Of Action For Indemnity
It is well settled that indemnity shifts the entire loss from one who is without fault and who has paid a third party based on liability that is vicarious, constructive, or derivative to the party who actually committed the wrongful act. Houdaille. Thus "[i]n order to properly plead a cause of action for common law indemnity, the party seeking indemnity must allege in his complaint 1) that he is wholly without fault; 2) that the party from whom he is seeking indemnity is at fault; and 3) that he is liable to the injured party only because he is vicariously, constructively, derivatively, or technically liable for the wrongful acts of the party from whom he is seeking indemnity." Florida Farm Bureau, 763 So.2d at 435; see also Dade County School Bd. v. Radio Station WQBA, 731 So.2d 638 (Fla.1999); Houdaille.
We find that the allegations contained in the Appellants' complaint against Litton, taken in the light most favorable to the Appellants, are sufficient to comply with these pleading requirements. See Florida Farm Bureau. Appellants alleged that they were completely without fault and that Litton was negligent and caused the loss to the decedents and to Mark. Most importantly, the Appellants allege that they were obligated to pay because of their position as owners of an unseaworthy vessel under admiralty law. This allegation distinguishes the instant case from Bodzo because, as we explain seriatim, the doctrine of unseaworthiness, as an integral part of admiralty law, makes a vessel owner strictly liable for the equipment on a vessel.

Evolution Of The Doctrine Of Unseaworthiness As A Rule Of Strict Liability Under Admiralty Law
The instant case falls within the domain of admiralty law because it involves *612 claims arising out of injury or death to persons related to a vessel on or in navigable waters during the course of traditional maritime activity.[3]See Sisson v. Ruby, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990); Foremost Ins. Co. v. Richardson, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982); Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972); See also Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996); Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). The consequence of being an admiralty case is that substantive maritime law applies. See Yamaha Motor Corp.; Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953).
Encompassed within the ambit of maritime law is the doctrine of unseaworthiness which has evolved into a rule of strict liability. See Yamaha Motor Corp.; Miles v. Apex Marine Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). The judicially created doctrine of unseaworthiness was initially established by the Supreme Court in The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903). The Court defined this remedy as one for "indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship." Id. at 175, 23 S.Ct. 483 (citation omitted). The transformation of the doctrine of unseaworthiness into a strict liability rule was discussed in Yamaha Motor Corp., wherein the Supreme Court stated:
Prior to 1944, unseaworthiness "was an obscure and relatively little used" liability standard, largely because "a shipowner's duty at that time was only to use due diligence to provide a seaworthy ship." Miles v. Apex Marine Corp., 498 U.S. 19, 25, 111 S.Ct. 317, 322, 112 L.Ed.2d 275 (1990) (internal quotation marks omitted). See also Moragne [v. States Marine Lines, Inc.], 398 U.S. [375], at 398-399, 90 S.Ct. [1772], at 1786-1787 [26 L.Ed.2d 339 (1970)]. Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944), however, notably expanded a shipowner's liability to injured seamen by imposing a nondelegable duty "to furnish a vessel and appurtenances reasonably fit for their intended use." Mitchell v. Trawler Racer Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed. 941 (1960). The duty imposed was absolute; failure to supply a safe ship resulted in liability "irrespective of fault and irrespective of the intervening negligence of crew members." Miles, 498 U.S., at 25, 111 S.Ct., at 322. The unseaworthiness doctrine thus became a "species of liability without fault," Seas Shipping Co. v. Sieracki, 328 U.S. 85, 94, 66 S.Ct. 872, 877, 90 L.Ed. 1099 (1946), and soon eclipsed ordinary negligence as the primary basis of recovery when a seafarer was injured or killed. Miles, 498 U.S., at 25-26, 111 S.Ct., at 321-322.
516 U.S. at 208, 116 S.Ct. 619 (footnote omitted).
As the Court noted, the doctrine is not limited to the structure of the vessel but extends to its "appurtenances." Thus, "[a] vessel is not seaworthy if ... it lacks, as here, the proper equipment or devices to allow it to engage safely in the trade for which it was intended." Meyers v. Scoot-A-Way Corp., 662 So.2d 411, 413 (Fla. 3d DCA 1995); see also Waggon-Dixon v. Royal Caribbean Cruises, Ltd., 679 So.2d 811, 813 (Fla. 3d DCA 1996) ("[T]he question of whether a vessel is seaworthy extends beyond the actual physical condition of the vessel.... The duty to provide a *613 seaworthy vessel obliges the owner of a vessel to provide its seamen with the proper equipment to carry out their respective jobs.") (citation omitted).
The estates filed separate counts based on the doctrine of unseaworthiness against the Appellants. Thus dismissal of the Appellants' indemnity action against Litton to recover damages it paid the estates based on these claims was error. The estates also brought claims pursuant to DOSHA, and Mark brought an action against the Appellants pursuant to the Jones Act. We next determine whether the doctrine of unseaworthiness is an integral part of the claims brought under DOSHA and whether it was pled as a collateral claim by Mark in conjunction with his claim under the Jones Act.

Application Of The Doctrine Of Unseaworthiness To The Claims Made Pursuant To The Jones Act And DOSHA
Negligence was Congress's choice of legal doctrine when it enacted the Jones Act, 46 U.S.C.App. § 688. The Jones Act extends the Federal Employees' Compensation Act, 5 U.S.C. § 8101 et seq., to seamen by providing a negligence cause of action to seamen injured or killed in the course of their employment. The courts do not treat the Jones Act as the exclusive remedy for seamen, but allow seamen to also assert claims based on the unseaworthiness doctrine. Thus it is relatively common for seamen to allege claims under the Jones Act and, in addition, to allege a claim pursuant to the doctrine of unseaworthiness which allows them to take advantage of the higher duty of care required of the vessel owner. See e.g., Mitchell.
DOSHA, 46 U.S.C.App. § 761 et seq., applies to the death of any person (seamen and non-seamen) caused by a wrongful act occurring on the high seas which is defined as one marine league or approximately three miles from shore. Although Congress also chose negligence principles to form the general contours of liability under this legislative scheme, DOSHA has been interpreted as including claims for both negligence and unseaworthiness. See Walston v. Lambertsen, 349 F.2d 660 (9th Cir.1965).
The Appellants attached as exhibits to their complaint for indemnity copies of the complaints filed by both estates and Mark. The complaints filed by each estate allege a cause of action based on the doctrine of unseaworthiness and DOSHA. The complaint filed by Mark includes sufficient allegations for a claim based on the doctrine of unseaworthiness in addition to a claim based on the Jones Act. These claims constitute a sufficient basis for Appellants' indemnity claim against Litton.

Conclusion
We conclude that the Appellants were subjected to strict liability pursuant to the doctrine of unseaworthiness, as a separate claim made by the estates of the decedents, and pursuant to the DOSHA claims. The action brought by Mark, although brought as an action under the Jones Act, contained sufficient allegations to establish liability pursuant to the unseaworthiness doctrine. Therefore, it was error for the trial court to dismiss Appellants' cause of action for indemnity against Litton. The order of dismissal is reversed and this case is remanded for further proceedings.
REVERSED and REMANDED.
PETERSON and PALMER, JJ., concur.
NOTES
[1] The third party complaint also included counts based on contribution, strict liability, negligent recall, and negligent design, testing and manufacturing. The only issue raised in this appeal by Appellants relates to dismissal of the count for indemnity which, in turn, formed the basis for the trial court's dismissal of the counts relating to strict liability, negligent recall, and negligent design, testing and manufacturing. Therefore, reversal of the order of dismissal relating to the count for indemnity will necessitate reversal of the order relating to the other counts of the complaint with the exception of the count relating to contribution. The Appellant did not raise any issue concerning dismissal of the count relating to contribution and, therefore, this court will not address that portion of the order.
[2] We must consider these factual allegations as true and in the light most favorable to Appellants. See Florida Farm Bureau Gen. Ins. Co., v. Insurance Co. of North America, 763 So.2d 429 (Fla. 5th DCA 2000). Whether they are sufficient to state a cause of action is a question of law and thus the proper standard of review is de novo. Warren v. K-Mart Corp., 765 So.2d 235 (Fla. 1st DCA 2000); Putnam County Envtl. Council, Inc. v. Board of County Comm'rs of Putnam County, 757 So.2d 590 (Fla. 5th DCA 2000).
[3] Admiralty law encompasses actions for personal injury and wrongful death caused by defective products. See e.g., Mink v. Genmar Indus., Inc., 29 F.3d 1543 (11th Cir.1994) (holding that substantive admiralty law applied to suit by injured boat passenger against the manufacturer for its alleged failure to provide adequate handholds or seats for passengers or other sufficient protection for passengers).